KENNETH K. GETTY *et al.*, Plaintiffs and Counterdefendants-Appellants, v. CHARLEEN H. HUNTER, Defendant and Counterplaintiff-Appellee (Fred H. Schlange *et al.*, Defendants-Appellees; The Ohio Casualty Insurance Company, Plaintiff; Charleen H. Hunter *et al.*, Defendants).

First District (1st Division)   No. 86—2569

Opinion filed February 8, 1988.

Jerome J. Goergen, of Chicago, for appellants.

Leo T. McGonigal, of Chicago, for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Kenneth K. Getty (Getty) and Kenneth K. Getty, Inc. (KKG, Inc.), appeal from the dismissal of count I of their amended

complaint, which sought the imposition of a constructive trust on a three-unit apartment building, located at 1339 S. Marengo, Forest Park, Illinois (the Marengo property), which was held in a land trust by Western National Bank of Cicero (Western National). Plaintiffs filed their complaint against Western National, as trustee of the land trust; Charleen H. Hunter, as sole beneficiary of the land trust; and Fred H. Schlange, the attorney who had placed the Marengo property in the land trust. The sole issue on appeal is whether the trial court properly dismissed count I of the amended complaint.[1]

The pleadings set forth the following events which resulted in this appeal. In 1972, Getty acquired an undivided one-half fee simple interest in the Marengo property from Mr. and Mrs. Solone. In that same year, Getty incorporated KKG, Inc., an insurance brokerage firm, and hired defendant Hunter. In January 1978, the Solones offered to convey their remaining one-half interest in the Marengo property to Getty. Defendant Schlange, Getty's attorney, advised Getty to convey the Marengo property to a land trust. Accordingly, in March 1978, Getty conveyed ownership of the Marengo property into the land trust established with Western National. In his original complaint, subsequently incorporated into the amended complaint, Getty indicated his reasons for putting title to the Marengo property in a land trust:

> "[S]hortly before the conveyance ***, a meeting was had at which [Getty] *** [Hunter and Schlange] were present *** and that during the course of the meeting, *** Schlange advised [Getty] that it would be in his best interest to allow *** Hunter to hold the entire beneficial interest in the said land trust and in this way attempt to defeat the claims of [Getty's] creditors and spouse, and further that it was agreed by and between the parties that *** Hunter would secretly execute an undated Direction and Amendment to Trust Agreement assigning her beneficial interest in the said trust to [Getty] but that [Getty]

[1]Plaintiffs' original one-count complaint requested imposition of a constructive trust on the Marengo property. Subsequently, plaintiffs filed an amended complaint which incorporated the constructive trust allegations and requested an accounting based on allegations that Hunter and Schlange had misappropriated certain insurance claim funds. Although the amended complaint failed to distinguish the allegations in support of a constructive trust from the allegations in support of an accounting by designating the former "count I" and the latter "count II," it is clear from the pleadings that plaintiffs had intended such designations. Accordingly, for purposes of clarity in this opinion, the designation "count I" shall refer to the constructive trust issue and "count II" shall refer to the accounting issue.

would not present the said letter of direction to the trustee until such time as his personal financial problems were settled *** ."

Thereafter, on March 9, 1979, Getty dated the letter of direction and presented it to the trustee. On May 10, 1979, the trustee returned the letter of direction to Getty, stating that Hunter had disavowed the execution of the document. After repeated unsuccessful attempts to have Hunter acknowledge the letter of direction, on July 6, 1979, Getty filed his original complaint against Hunter and Schlange, seeking imposition of a constructive trust on the Marengo property. Getty alleged that Schlange improperly represented him in setting up the land trust and that Schlange and Hunter had entered into a conspiracy to divest him of all of his interest in the Marengo property.

On July 13, 1979, Getty amended his complaint, adding KKG, Inc., as a plaintiff as well as allegations in support of a request for an accounting and restitution of funds allegedly misappropriated from KKG, Inc., by Schlange and Hunter (count II). Count II is not a subject of this appeal. On November 1, 1978, Hunter filed her motion to dismiss count I on the grounds that the equitable doctrine of "unclean hands" estopped Getty from seeking a constructive trust on property that he had conveyed for admittedly fraudulent purposes. The record contains no ruling on this motion. On the same date, Hunter also filed a counterclaim against Getty and KKG, Inc., seeking an accounting and other relief with respect to various business dealings between the parties which are not pertinent to this appeal. Thereafter, on March 5, 1980, Ohio Casualty Company filed suit against Hunter, Getty and Schlange, alleging that they had conspired to defraud Ohio by filing a fictitious insurance claim. On Getty's motion, the Ohio Casualty suit was consolidated with Getty's suit and Hunter's counterclaim.

On March 25, 1981, Hunter moved for summary judgment or, in the alternative, for dismissal with prejudice of Getty's count I, which sought imposition of a constructive trust. Hunter's position was predicated on Getty's own admission in his complaint that his conveyance of the beneficial interest in the land trust to Hunter was purposefully done to defeat Getty's creditors and his spouse. Hunter denied that she had known of the fraudulent nature of the conveyance and claimed that the beneficial interest was conveyed to her for good and valuable consideration. On July 1, 1981, the trial court granted Hunter's motion to dismiss with prejudice count I of the amended complaint "on the ground that the plaintiff Getty is not entitled to equitable relief from the fraudulent conveyance in which he voluntar-

ily participated, and the Court so finds that the conveyance by Getty was fraudulent and voluntary on his part."

Following numerous motions and continuances, on February 21, 1985, the trial court entered an order with respect to both count II of Getty's amended complaint and Ohio Casualty's complaint, ruling: (1) count II—judgment entered in favor of Schlange and Hunter; and (2) Ohio Casualty's complaint—Hunter released from liability; judgment entered in favor of Schlange and Getty. No appeal has been taken from the February 21, 1985, order.

With respect to Hunter's counterclaim, in an order dated September 26, 1985, the trial court found that, as co-purchaser with Getty of certain property located on Ogden Avenue in Lyons, Illinois, Hunter was entitled to an accounting from Getty regarding all income and expenses relating to the Ogden property. In a subsequent order dated August 22, 1986, the trial court reiterated its ruling as to Getty's obligation to give Hunter an accounting on the Ogden property and entered judgment in favor of Getty and against Hunter as to all other counts of the counterclaim.

Pursuant to plaintiffs' notice of appeal, this appeal is taken from the July 1, 1981 (dismissal of count I), and August 22, 1986 (counterclaim), orders. However, plaintiffs' argument on appeal is confined to the propriety of the dismissal of count I. Accordingly, that is the sole issue addressed by this court. See *Williams v. Danley Lumber Co.* (1984), 129 Ill. App. 3d 325, 472 N.E.2d 586.

At the outset of their argument that the trial court erred in dismissing count I of their complaint, which sought imposition of a constructive trust upon the Marengo property, plaintiffs inappropriately contend that the trial court erred in granting defendants' motion for summary judgment on the grounds that several genuine issues of material fact exist. Although defendants had moved for summary judgment, their motion was entitled "motion for summary judgment or, in the alternative, to dismiss with prejudice." In ruling on the motion, the trial court dismissed count I of plaintiffs' amended complaint with prejudice on the ground that the underlying conveyance had been fraudulent. The trial court did not grant summary judgment. Thus, plaintiffs' argument as to the existence of genuine issues of material fact is irrelevant.

Plaintiffs further contend that the trial court "ignored" the issues as to confidential or fiduciary relationship between Getty and Hunter and Schlange and erroneously dismissed count I on grounds that there was a fraudulent conveyance. Plaintiffs are correct that the trial court did not address the issues as to confidential or fiduciary rela-

tionship. However, we find that it was unnecessary for the trial court to do so because its determination, based on Getty's own admission, that the conveyance was fraudulent precluded the necessity to address the issue of confidentiality or fiduciary relationship. Pursuant to Illinois law, every transfer of property made with the intent to disturb, delay, hinder or defraud creditors is void as against such creditors, but binding on the parties to the transfer and those in privity with them, and cannot be set aside in a suit by the participating grantor. (*Peric v. Chicago Title & Trust Co.* (1980), 89 Ill. App. 3d 271, 411 N.E.2d 934; Ill. Rev. Stat. 1985, ch. 59, par. 4.) Moreover, the law will not allow a party to purposefully place his property out of his control for a fraudulent purpose and then attempt to regain control once that purpose has been accomplished. Instead, in keeping with the legal maxim that "no man may take advantage of his own wrong" (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 158, 421 N.E.2d 869, quoting *Glus v. Brooklyn Eastern District Terminal* (1959), 359 U.S. 231, 232-33, 3 L. Ed. 2d 770, 772, 79 S. Ct. 760, 762), courts will leave the parties as it finds them. *Hanley v. Hanley* (1958), 14 Ill. 2d 566, 152 N.E.2d 879.

In the present case, Getty expressly admitted in his complaint that Hunter was to hold the beneficial interest in the land trust "to defeat the claims of [Getty's] creditors and spouse." Pursuant to *Peric* and *Witherell*, he may not now seek relief from the courts for the consequences of his voluntary misconduct.

Plaintiffs attempt to distinguish *Peric* from the case at bar on the grounds that the petitioner in *Peric* sought to establish a resulting trust, rather than a constructive trust, upon real property. This distinction is without merit. Regardless of the relief sought, if the party seeking relief is attempting to avoid the consequences of a voluntary fraudulent conveyance, the courts will not reward the misconduct. *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869.

In a further attempt to undermine the applicability of *Peric*, plaintiffs cite to *Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 369 N.E.2d 172. In *Mascenic*, plaintiff sought the imposition of a constructive trust upon certain real property held in a land trust of which defendant was the sole beneficiary. Upon plaintiff's admission that the real property had been placed in a land trust so as to prevent plaintiff's spouse from acquiring an interest in the property in the event of divorce proceedings, the trial court barred recovery pursuant to the equitable doctrine of "unclean hands." Upon review, the appellate court reversed on the grounds that in order to invoke the "unclean hands" doctrine, plaintiff's underlying conduct "must have been con-

duct in connection with the very transaction being considered or complained of, and must have been misconduct, fraud, or bad faith toward the defendant making the contention." (53 Ill. App. 3d at 972.) Because the plaintiff's conduct had been intended to defraud plaintiff's wife and not defendant, the appellate court held that the "unclean hands" doctrine did not apply.

Although the facts in the present case are remarkably similar to those in *Mascenic,* we find *Mascenic* distinguishable on a pivotal point. Unlike *Mascenic,* in the present case, the trial court did not predicate its decision on the "unclean hands" doctrine. Rather, it relied on *Peric.* In *Peric,* petitioner and his father conveyed real property that they had jointly purchased on an installment contract to a land trust. The father was named the sole beneficiary of the trust and the petitioner was named the successor beneficiary. Petitioner admitted that the property had been transferred to the land trust and his father had been named sole beneficiary so as to prevent the property or the beneficial interest from being used to satisfy a $60,000 default judgment which had been entered against him. The father was to remain the sole beneficiary of the trust until the $60,000 judgment was resolved. However, without petitioner's knowledge, the father amended the trust agreement, naming his other son, Milovan, as the successor beneficiary. Subsequently, the father died and Milovan, as the sole beneficiary, conveyed the property to another land trust.

Petitioner petitioned the trial court to have a resulting trust in his favor established upon the property, claiming that he had paid one-half of the down payment, the installment payments, and operating expenses on the property. The trial court entered judgment in favor of the trustee and Milovan. The appellate court affirmed, stating that petitioner would not be allowed to convey property for fraudulent purposes and then attempt to regain control of the property once the fraudulent purposes had been accomplished. Instead, the court would leave the parties as it found them. We agree with the rationale of the *Peric* court and find it dispositive of the issue before this court.

For the aforementioned reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

QUINLAN and MANNING, JJ., concur.