AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Plaintiffs-Appellees, v. DANIEL VINSON, Defendant-Appellant (Theatris Vinson *et al.*, Third-Party Defendants-Appellees).

First District (4th Division)   No. 1—93—3892

Opinion filed June 22, 1995.—Rehearing denied July 20, 1995.

Sidley & Austin, of Chicago (John G. Levi, Mark B. Blocker, Marc A. Benjamin, and Eugene L. Miller, of counsel), for appellant.

Robert J. Weber, Anne T. Bottini, and Maureen P. Higgins, all of Chicago, for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

This dispute involves land sold by third-party defendants Theatris and Lola Vinson to third-party defendants Lewis and Delores Secor and held in trusts at plaintiffs, American National Bank and Trust and Beverly Trust. Plaintiffs brought this action to eject defendant, Daniel Vinson, from possession, and defendant counterclaimed for the imposition of a resulting trust on the property in his favor. The trial court ruled for plaintiffs and Daniel Vinson now appeals, contending that: (1) the court improperly applied the doctrine of unclean hands to deny his request for a resulting trust on the property, and (2) the court erred in declaring the Secors to be *bona fide* purchasers of the property.

The property at issue consists of two parcels of land, an east portion and west portion, located on west Warren Boulevard near the former Chicago Stadium. From 1957 until April 15, 1977, the property was owned by Amoco Oil Company and leased to Daniel Vinson for the operation of a service station. In 1976, Amoco informed Daniel that it was terminating his lease due to unsatisfactory profits, but offered him an option to purchase the property for $22,000. Daniel accepted the offer and arranged a deal with his brother, Theatris Vinson, whereby the property was purchased and placed into Theatris' land trust at Beverly Trust Company. Daniel testified that he transferred title into his brother's trust on the advice of his attorney in order to avoid attachment under several outstanding judgments against him. Daniel also indicated that he desired to shield the property against claims by his former wife Olive, because the two were then involved in divorce proceedings.

The evidence showed that, on Daniel's behalf, Theatris and Lola Vinson procured financing for the purchase and provided security and earnest money. At Theatris' and Lola's direction, Beverly as trustee executed the mortgage and installment note. It was undisputed, however, that Daniel was to remain in full possession and control of the property. Further, the testimony showed Daniel was to have sole responsibility for mortgage payments, taxes and expenses.

Daniel occupied the property from 1977 until June of 1991, running the service station until 1983 and then opening a parking lot and mission on the premises. Theatris and Lola neither came to the premises nor participated in the businesses.

By 1991, the property was encumbered with liens for years of

unpaid mortgage installments, real estate taxes and other expenses. In June 1991, unbeknownst to Daniel, Theatris and Lola executed contracts to sell both parcels of the property to Lewis and Dolores Secor. Theatris and Lola assigned the beneficial interest in the Beverly land trust to the Secors, who subsequently caused title to the east parcel to be transferred into a trust at American National Bank.

Lewis Secor testified that for 20 years prior to the purchase, he owned and operated a parking lot directly across the street from the subject property. Secor admitted being aware since 1960 that Daniel ran the service station and testified that he had known Daniel personally since 1976 and occasionally had purchased gasoline from him. Secor's real estate agent, Eugene Byrne, testified that he had informed the Secors that a title search disclosed a previous effort by Daniel to redeem the property taxes. Despite these facts, neither the Secors nor Byrne ever approached Daniel or endeavored to ascertain his interest in the property. According to Byrne and Lewis Secor, this was because the title search contained no reference to Daniel, but disclosed that Beverly had an interest in the property.

At the close of the evidence, the trial court initially ruled, *sua sponte*, that Daniel had come to court with unclean hands because he placed the property in Theatris' trust merely to elude judgment creditors and avoid taxes. The court then determined that the Secors were *bona fide* purchasers of the property without knowledge of Daniel's interest and granted plaintiffs' request for ejectment. The judge emphasized that although Daniel could not have purchased the property without Theatris' assistance, he considered Daniel to be the primary owner of the property.

On appeal, Daniel argues that the court misapplied the doctrine of unclean hands to deny him equitable relief. While we do not concur in the basis for the court's ruling, we affirm its decision.

■ The determination to grant or deny equitable relief is a matter of trial court discretion. (*Hanley v. Hanley* (1958), 14 Ill. 2d 566, 574, 152 N.E.2d 879.) A party who conveys his property in order to keep it from judgment creditors cannot, through the remedy of a resulting trust, seek assistance from the courts to help him avoid the consequences of his conduct. (*Getty v. Hunter* (1988), 166 Ill. App. 3d 453, 457, 519 N.E.2d 1040; *Peric v. Chicago Title & Trust Co.* (1980), 89 Ill. App. 3d 271, 273, 411 N.E.2d 934; see G. Bogert, The Law of Trusts & Trustees § 463, at 388-98 (2d rev. ed. 1991).) The law will not permit a party to intentionally place his property out of his control for a fraudulent purpose and then attempt to regain it once that purpose has been accomplished. *Hanley*, 14 Ill. 2d at 574; *Getty*, 166 Ill. App. 3d at 457; *Peric*, 89 Ill. App. 3d at 273; see also *Kaibab*

*Industries, Inc. v. Family Ready Homes, Inc.* (1983), 111 Ill. App. 3d 965, 444 N.E.2d 1119.

In this case, Daniel admitted placing title to the subject property into his brother's trust solely to prevent attachment of the property by any one of Daniel's several judgment creditors. In light of this illicit scheme, Daniel cannot now seek the court's assistance in regaining his property.

■ The evidence in this case supports the trial court's finding that although Theatris and Lola provided Daniel with credit and financing for the purchase, it was the parties' intention that Daniel be the purchaser and primary owner of the property, and that he be solely responsible for mortgage and tax payments. These facts may be said to form the basis for imposition of a resulting trust in Daniel's favor, in proportion to his contribution to the purchase price. (See *Wright v. Wright* (1954), 2 Ill. 2d 246, 118 N.E.2d 280; *Caudill v. Beil* (1984), 127 Ill. App. 3d 847, 469 N.E.2d 257; *Hocking v. Hocking* (1979), 76 Ill. App. 3d 29, 394 N.E.2d 653.) Nonetheless, even if a trust were arguably appropriate, there was no abuse of discretion in refusing to impose one in this case. A fraudulent conveyance is binding upon the parties to the transfer and cannot be set aside in a suit by the participating grantor. (*Peric*, 89 Ill. App. 3d at 273, citing *Rosenbaum v. Huebner* (1917), 277 Ill. 360, 366, 115 N.E. 558.) Accordingly, there was no abuse of discretion on this point.

Daniel argues that unclean hands is inapplicable unless the alleged fraudulent conduct was directed towards the transaction at issue, namely, the sale to the Secors, and against the party invoking the doctrine as a defense. (See *Evangeloff v. Evangeloff* (1949), 403 Ill. 118, 126, 85 N.E.2d 709; *Mascenic v. Anderson* (1977), 53 Ill. App. 3d 971, 369 N.E.2d 172.) However, our decision does not rest upon the doctrine of unclean hands as it is commonly applied, but upon the precept that equity will not allow a party to take advantage of his own fraudulent conduct. (See *Getty*, 166 Ill. App. 3d at 457-58.) We find the cases of *Peric* (89 Ill. App. 3d 271, 411 N.E.2d 934) and *Getty* (166 Ill. App. 3d 453, 519 N.E.2d 1040) more factually analogous to the case at bar than those upon which Daniel relies.

Daniel also argues that the court erred in finding the Secors to be *bona fide* purchasers.

■■ *Bona fide* purchasers assume title free of all prior interests in the property (*Daniels v. Anderson* (1993), 252 Ill. App. 3d 289, 296, 624 N.E.2d 1151), but one who purchases property with notice of other claims against it takes title subject to those claims in the same manner as his vendors. (See *Stein v. Green* (1955), 6 Ill. 2d 234, 241-42, 128 N.E.2d 743.) Through the operation of his businesses, Daniel

maintained continuous, open and obvious possession of the property for over 30 years. This clearly placed the Secors, who operated a competing business across the street, on constructive notice of Daniel's interest, so as to trigger a duty on their part to make further inquiry into any property rights Daniel may have had. (See *German-American National Bank v. Martin* (1917), 277 Ill. 629, 115 N.E. 721; *Stein*, 6 Ill. 2d at 242.) The Secors' failure to make such inquiry precludes a finding that they were *bona fide* purchasers and, theoretically, would mandate that they take the property subject to Daniel's interest.

However, the Secors' lack of *bona fide* purchaser status is of no consequence in this case, in light of our finding that the court did not abuse its discretion in refusing to impose a resulting trust for Daniel's interest. Therefore, as holders of the beneficial interest in the Beverly trust, Theatris and Lola Vinson validly assigned their interest in the property to the Secors.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAHILL and THEIS, JJ., concur.