77 F.3d 484
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff,
v.
Nilda O. SOSA, Defendant/Third Party Plaintiff-Appellee,
v.
LAKESIDE BANK, Defendant/Third Party Defendant-Appellant.
 No. 95-1322.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 29, 1995.
Decided Jan. 8, 1996.
 
 Before CUMMINGS, FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 In 1977, Musical Products, Inc. borrowed $100,000 from Lakeside Bank of Illinois. To secure the loan, the bank obtained a promissory note, a written guaranty of the note, and a trust deed creating a mortgage on real property owned in joint tenancy by Vincent and Nilda Sosa. (Musical Products appears to have been the Sosa family business.) Each of these documents contained the signatures of Vincent and Nilda Sosa, either personally or in their capacity as President and Secretary of the corporation. In 1980, Lakeside assigned its interest in the loan to the Small Business Administration (SBA). In 1988, after Musical Products defaulted on the loan, the government foreclosed. In response to the foreclosure complaint, Nilda denied signing the promissory note or the mortgage. It is not clear who executed the apparent forgeries, but presumably it was Vincent. Lakeside acknowledges that Nilda's signature on the mortgage was notarized by a bank officer who did not witness her signing, and that Nilda did not consent to or otherwise ratify the signature of her name. Also in her response, Nilda acknowledged that in April 1985 Vincent and Nilda conveyed their interest in the real estate into a trust naming Nilda as the sole beneficiary. Nilda acknowledges that she signed the trust agreement and appears on the deed as a "grantor," however she also claims Vincent never told her about the mortgage securing the loan to Musical Products.
 
 
 2
 In 1992, before completion of the foreclosure proceedings, Vincent died. (For a number of years Nilda and Vincent had been separated and he apparently had moved to Mexico.) Nilda then brought a third-party complaint against Lakeside Bank alleging that she and Vincent owned the property as joint tenants until his death, at which time she became the sole owner in fee simple. The complaint claimed the bank was negligent and had committed fraud in notarizing the forged signatures. (At no time in the complaint did Nilda acknowledge the trust she and Vincent had created in 1985.) At about the same time, Nilda also filed affirmative defenses to the government's foreclosure action, essentially contending that because of the forgeries her interest in the property remained unencumbered and therefore any interest subject to foreclosure was extinguished at the time of Vincent's death by operation of law as a result of her right of survivorship as a joint tenant.
 
 
 3
 In June 1994, Nilda filed a motion for summary judgment on the government's foreclosure action and on her third-party complaint against Lakeside Bank. In its reply, the government admitted that the mortgage was not valid as to Nilda's one-half interest, but maintained that the encumbrance on Vincent's original one-half interest survived. The district court granted Nilda's motion on the foreclosure action, concluding that the mortgage lien on Vincent's one-half interest was extinguished by his death and that as the surviving joint tenant Nilda had taken title free and clear. But the court did not rule on the matter of Lakeside Bank's liability on her third-party complaint. Nilda and Lakeside Bank then settled and the complaint against Lakeside Bank was dismissed.
 
 
 4
 Following summary judgment, the government and Lakeside Bank entered into a settlement agreement in which Lakeside Bank paid the SBA $60,000 and the SBA assigned back to the bank all its rights in the Sosa mortgage and the litigation. Lakeside Bank then appealed.
 
 
 5
 Lakeside Bank argues that notwithstanding the forgeries, a valid mortgage was created against Vincent's undivided one-half interest in the property. When Vincent and Nilda established the trust in 1985 and thereby severed the joint tenancy, the encumbrance on the property survived. Thus, Vincent's death did not extinguish the government's (now Lakeside Bank's) interest in the property. Nilda counters that because Lakeside Bank participated in the forgeries which helped create the encumbrance, the equitable doctrine of unclean hands precludes it from foreclosing on the property. Furthermore, Nilda claims that because her husband concealed the encumbrance on the property, the 1985 conveyance of his interest into the trust was fraudulent and thus void. Consequently, Nilda maintains, the joint tenancy remained intact, and when Vincent died his interest in the property and any related encumbrances were extinguished.
 
 
 6
 We review the district court's grant of summary judgment de novo. Hedberg v. Indiana Bell, 47 F.3d 928, 931 (7th Cir.1995). Illinois, whose law we apply, permits a joint tenant to mortgage his interest in property without the other joint tenant's consent or knowledge, Harms v. Sprague, 473 N.E.2d 930, 933-34 (Ill.1984), and without severing the joint tenancy. Johnson v. Beneficial Financial Co. of Illinois, 506 N.E.2d 1025, 1027 (Ill.App.Ct.1987); Harms, 473 N.E.2d at 933-34. Thus, Vincent had the power to secure a loan with a mortgage lien on his undivided one-half interest in the property without Nilda's consent or knowledge.
 
 
 7
 The forgeries do not change this conclusion. In Johnson, for instance, a husband forged his wife's signature on a quitclaim deed conveying to him sole title to property they held in joint tenancy. The husband then took out a $10,000 loan secured by a second mortgage on the property which was duly recorded. 506 N.E.2d at 1025-26. In a subsequent divorce settlement, the husband conveyed his interest in the property to the wife and was ordered to make payments on the second mortgage, which he failed to do, precipitating an action for foreclosure. At issue in Johnson was whether, in light of the forgery and the conveyance to the wife, the lender had a valid mortgage lien on the property. Id. at 1026-27. The court held that the husband's forged quitclaim deed and subsequent mortgage indeed created a mortgage lien, though only against his one-half interest, and that the lien survived the conveyance to the wife. Id.
 
 
 8
 The same legal principle applies here. Notwithstanding the forgeries, under Illinois law Lakeside Bank obtained a valid mortgage lien on Vincent's one-half interest in the property. Vincent's actions may have been fraudulent as Nilda now claims, but they do not defeat the creation of a valid encumbrance.
 
 
 9
 The next critical question, then, is whether the lien survived Vincent's death. "An inherent feature of the estate of joint tenancy is the right of survivorship, which is the right of the last survivor to take the whole of the estate." Harms, 473 N.E.2d at 934. Under Illinois law, a "mortgage given by one joint tenant of his interest in the property does not sever the joint tenancy." Therefore if the joint tenancy was still intact when Vincent died, by operation of law the mortgage would have been extinguished and Nilda would be "the sole owner of the estate, in its entirety." Id. The district court did conclude that Vincent's death ended the joint tenancy and thus voided the debt. But the court did not address the preliminary question of whether the joint tenancy was still in effect when Vincent died.
 
 
 10
 "A joint tenancy, even though between husband and wife, can be severed when one of the tenants conveys his interest to a third person." Olney Trust Bank v. Pitts, 558 N.E.2d 398, 401 (Ill.App.Ct.1990) citing Johnson v. Johnson, 297 N.E.2d 285, 288 (Ill.App.Ct.1973). And as is the case with incurring liens, "[a] joint tenant can sever a joint tenancy by conveying his or her interest without the consent or permission of the other." Pitts, 558 N.E.2d at 401 citing Johnson v. Beneficial Finance Co. of Illinois, Inc., 506 N.E.2d 1025, 1027 (Ill.App.Ct.1987). In 1985 both Vincent and Nilda conveyed their interest in the property into a trust with Nilda as the beneficiary. On the face of the warranty deed in trust, Vincent and Nilda appear as "grantors." Thus, by conveying her interest to a third party (a trust), Nilda herself participated in the severance of the joint tenancy, with the result that the mortgage lien was not extinguished by a right of survivorship at Vincent's death and so remains enforceable.
 
 
 11
 Nilda attempts to nullify the conveyance into the trust (and thereby revive her right of survivorship) by arguing that Vincent's failure to disclose the encumbrance constitutes a fraud which voids the trust. Under Illinois law, common law fraud requires "(1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." Lagen v. Galcor Co., 653 N.E.2d 968, 972 (Ill.App.Ct.1995).
 
 
 12
 There are at least two problems with Nilda's fraud argument. First, it is not clear that Nilda can dodge the bank's foreclosure attempt even assuming the trust was fraudulently created, for if there was fraud in the establishment of the trust, Vincent was its perpetrator--not Lakeside Bank. To begin with, the bank appears to have had nothing to do with the establishment or maintenance of the trust. Specifically, Nilda does not claim that Lakeside Bank knowingly made false statements regarding the trust or intended to induce her to agree to the trust. Nilda asserts that she can avoid foreclosure by claiming to be the victim of fraud in the establishment of a trust, a transaction totally unrelated to the mortgage that was recorded eight years earlier. She cites no authority, probably because Illinois law appears to be opposite her proposal. See Northern Trust Co. v. Halas, 629 N.E.2d 158, 164 (Ill.App.Ct.1993) ("[T]he equities which may be interposed as a defense to foreclosure must arise out of the transaction in which the note and mortgage were given."). Moreover, there is no indication that prior to this appeal Nilda took any significant legal action to void the trust. She made virtually no mention of the trust in her pleadings below and only now on appeal claims the conveyance was fraudulent. All of which may be fatal to Nilda's argument under Illinois law, where "[a] voidable deed is good against everyone ... until it has been set aside by a court of competent jurisdiction." Logue v. Von Almen, 40 N.E.2d 73, 81-82 (Ill.1941); cf. American National Bank and Trust v. Vinson, 653 N.E.2d 13, 16 (Ill.App.Ct.1995) (fraudulent conveyance binding upon parties to the transfer).
 
 
 13
 We say "may be fatal" because we need not resolve the issue. Nilda's argument that the trust was invalid because of Vincent's fraud fails for a more fundamental reason: she did not reasonably rely on his silence about the mortgage as required in an action for fraud. See Lagen, 653 N.E.2d at 972. Because a proper title search would have revealed the mortgage lien, under Illinois law Nilda had constructive notice of the encumbrance on the property when she and Vincent created the trust. See Security Savings & Loan Ass'n v. Hofmann, 537 N.E.2d 18, 20 (Ill.App.Ct.1989) (constructive notice where simple title search would have revealed notice of lis pendens ). There is no suggestion that Vincent tried to mislead Nilda so as to defraud her of her interest in the property in order to benefit his creditors (indeed quite the opposite appears to have been his intention). Under the circumstances of this case, Nilda cannot escape responsibility for failing to discover the lien on the property. Therefore, we hold that the trust is valid as far as the bank's interests are concerned.
 
 
 14
 This leaves us with the equitable implications of the bank's role in the forgeries. Nilda contends that because Lakeside Bank facilitated the forgeries by which the property was encumbered, it is equitably barred from taking advantage of those forgeries in an action for foreclosure. It is a "[d]eeply rooted" maxim in American jurisprudence that "[n]o man may take advantage of his own wrong." Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 232-33 and n. 6 (1959). Hence, "equity will not allow a party to take advantage of his own fraudulent conduct." Vinson, 653 N.E.2d at 16. The equitable doctrine of unclean hands, which Nilda invokes, "precludes a party who has been guilty of misconduct, fraud or bad faith, connected to the matter in the litigation, from receiving any relief from a court of equity." O'Brien v. Cacciatore, 591 N.E.2d 1384, 1390 (Ill.App.Ct.1992). As a proceeding in equity (Halas, 629 N.E.2d at 164), the bank's foreclosure action is subject to these principles.
 
 
 15
 Yet the doctrine of unclean hands has limits; a party does not forfeit all its legal rights merely because it erred along the way. In fact, "application [of the doctrine] has not been favored by the courts" in Illinois. La Salle National Bank v. 53rd-Ellis Currency Exchange, Inc., 618 N.E.2d 1103, 1119 (Ill.App.Ct.1993). Hence, "[i]n looking at whether unclean hands are present, the court will look to the intent of the party, not the effect of its actions, and will only find unclean hands present if there has been fraud or bad faith." Id. (emphasis added).
 
 
 16
 An official at Lakeside Bank wrongfully notarized the forged signature of Nilda Sosa on the trust deed that created the mortgage lien at issue. The doctrine of unclean hands would seem to bar the bank from foreclosing on Nilda's interest and thus profiting from its malfeasance. But at this point only Vincent's mortgaged interest is exposed. Both parties now agree that because of the forgery, Nilda's interest in the property was not encumbered, and Nilda's lawsuit against the bank for its role in the forgeries has been settled. Hence the effects of the bank's misconduct with respect to Nilda's interest in the property have been at least somewhat mitigated. The encumbrance of Vincent's interest is another matter, however. As previously explained, Vincent had the right to encumber his interest in the joint tenancy with or without his wife's consent or knowledge. Harms, 473 N.E.2d at 933-34. Therefore, Lakeside Bank did not defraud Nilda when it made a loan to Musical Products secured by an interest in Vincent's portion of the property, even if it thought it was getting an interest in the whole. Nor was it under a duty to inform Nilda of the mortgage lien on Vincent's interest at the time the Sosas together created the trust and severed the joint tenancy. If there was fraud in the creation of the trust, Vincent was to blame, not Lakeside Bank.
 
 
 17
 Furthermore, there is no evidence that the bank ever intended to defraud Nilda when it notarized the forgeries. Nilda's harshest accusation is that a bank official falsely certified that he had witnessed both Sosas sign a trust deed making their property collateral for a $100,000 loan to the family business. But this alone does not evince an intent to defraud Nilda. Rather, it is just as likely that the bank notarized the documents without witnessing the signatures because, as Nilda admits, the Sosas were longtime (and perhaps trusted) customers of the bank and the bank assumed Vincent and Nilda were acting together. One thing, however, is certain: in the end Lakeside Bank got far less than it bargained for because neither Musical Products nor the Sosas repaid the loan and it is now unable to foreclose on the entire property. We do not believe equity is served by cancelling the debt Vincent secured with a valid mortgage lien on his interest in the property. The false notarization under these circumstances is not enough to show the bad faith or fraud necessary to bar a foreclosure of Vincent's interest under the doctrine of unclean hands.
 
 
 18
 REVERSED.