SIXTH DIVISION

No. 1-05-3134

| | |
|---|---|
| M. L. LAH, as Trustee u/t/a dated February 13, 2001, a/k/a Trust No. 5226, | ) ) ) |
| | ) |
| Plaintiff and Counterdefendant-Appellee, | ) ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| CHICAGO TITLE LAND TRUST COMPANY, as Trustee u/t/a dated June 26, 2002, a/k/a Trust No. 1111039; CHICAGO TITLE LAND TRUST COMPANY, as Trustee u/t/a dated November 14, 2001, a/k/a Trust No. 1110352; CHICAGO TITLE LAND TRUST COMPANY, as Trustee u/t/a dated November 5, 2001, a/k/a Trust No. 1110090 | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants and Cross-defendants-Appellees, | ) ) |
| | ) |
| | ) |
| | ) |
| LaSalle Bank, NA, as Trustee u/t/a dated March 19, 2001, a/k/a Trust No. 127392, | ) ) ) |
| | ) |
| Defendant and Counterplaintiff-Appellant; | ) ) |
| | ) |
| | ) |
| Valerian Simirica, | ) |
| | ) |
| Defendant and Counterplaintiff and Cross-plaintiff-Appellant; | ) ) ) |

Appeal from the
Circuit Court of
Cook County

No. 02 CH 21631

No. 1-05-3134

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| Robert Ambriz, | ) | |
| | ) | |
| Defendant and | ) | Honorable |
| Cross-defendant-Appellee. | ) | Mary Anne Mason |
| Appellee. | ) | Judge Presiding |

JUSTICE McNULTY delivered the opinion of the court:

In a dispute over title to a parcel of Chicago real property, the circuit court denied the claims of Valerian Simirica because his title was fraudulent and because he was not a good-faith purchaser who lacked notice of the fraud. The court further held that the competing claimant, John Waters, should be granted title to the property despite securing it through actions that were "inequitable (at best) and more likely, unlawful," because those actions, in a prior proceeding, harmed a third party, not Simirica, and could not be raised by Simirica as support for his claims. While we agree with the circuit court's assessment of the merits of Simirica's claims, we do not agree that it lacked authority to address Waters' improprieties or that it was obliged to award him title to the property. Accordingly, we affirm the court's disposition of Simirica's claims, vacate its award of title in fee simple to Waters, and remand for further proceedings.

BACKGROUND

The instant appeal comes to this court without the filing of an appearance or brief by any party other than appellant Valerian Simirica.  Under such circumstances, a reviewing court is not required to search the record for the purpose of sustaining the trial court's judgment, but if the claimed errors are such that a court can decide them without the aid of an appellee's brief, the reviewing court "should decide the merits of the appeal."  First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133 (1976).  We find the issues and record before us in the instant case to be sufficiently straightforward that the matter may fairly resolved despite the absence of an appellee's brief, and so proceed to the merits.

Plaintiff M. L. Lah, trustee for a land trust whose beneficiary was John Waters, commenced an action to quiet title to a parcel of residential property in Chicago.  Defendant Valerian Simirica, beneficiary of a land trust administered by defendant LaSalle Bank, also claims title to the property on behalf of his trustee.

At trial, Waters testified that he bought and rehabbed distressed properties in the Chicago area; that an acquaintance, Nathan Edmond, sometimes advised him of properties that were about to be sold for delinquent taxes; and that on February 12,

2001, Edmond informed him that the owner's period for redemption of the subject property was to expire the next day.

Waters testified that he visited the property, saw a single-family home on a residential lot, and learned from a neighbor the name and telephone number of the property's owner, Nancy Kwiatkowski. Waters called Kwiatkowski, and when she told him that she did not intend to redeem the property, he offered to purchase it for $10,000. Waters testified that he and Kwiatkowski reached an oral agreement for purchase of the property over the telephone, but he did not recall giving her any information about the redemption process. Waters conceded that when he went to Kwiatkowski's workplace to attempt to finalize the purchase, she told him that she was not ready to proceed.

Despite his failure to reach agreement with Kwiatkowski, Waters redeemed the unpaid taxes on the last day of the redemption period, February 13, 2001. Waters and Kwiatkowski reached agreement for the sale of the property for $25,000 on March 16, 2001. Both the deed from Kwiatkowski to Waters' trustee and the purchase contract executed on March 16 were back-dated to February 13, 2001, and Waters testified that he put the earlier date on the deed because he "wanted to be sure that I had an interest in the property at the time I made the redemption so that the redemption could not be set aside." When a tax

4

purchaser, Mooring Tax, did attempt to expunge Waters' redemption, he produced the deed, his redemption was apparently held to be proper, and the Mooring Tax expungement petition was denied. Waters did not record the deed from Kwiatkowski until September 2002.

Valerian Simirica's claim of title descends from a second deed from Kwiatkowski. Waters' acquaintance, Nathan Edmond, testified at trial that after informing Waters about the pending tax sale, he also gave Waters half of the approximately $4000 needed to cure the property's tax delinquency. According to Edmond, Waters represented that he would handle the details of the purchase from Kwiatkowski; Edmond said that he expected to be identified as a co-owner of the property on the deed that Kwiatkowski executed. Edmond attended a court hearing on the Mooring Tax expungement petition and saw a deed from Kwiatkowski that did not identify him as a purchaser.

Edmond testified that he did not find any deed from Kwiatkowski recorded, that he was still interested in acquiring the property, and that after approaching Kwiatkowski and her attorney, he got a deed to the property. The record presented to this court includes a quitclaim deed from Kwiatkowski to a trust administered by Chicago Title Land Trust Company; the deed was prepared by Edmond and indicates that the consideration for the

transfer of interest was $10.  Edmond testified that he was not the beneficiary of the grantee land trust, and that he was not sure whether the beneficiary was a corporation or an individual named Andy Roman.  Although the deed from Kwiatkowski to the trust was dated March 16, 2001, the land trust which received the deed was not created until June 26, 2002, which was also the date on which the deed was recorded.  Simirica claims title to the property through a chain of land trust transactions stemming from this deed.

Lah, Waters' trustee, filed an action to quiet title which alleged that the deed prepared by Edmond to convey the property from Kwiatkowski to a land trust was a forgery; that the deed failed because it conveyed to a nonexistent grantee: a land trust that had not yet been created; and that purchasers whose claims came from the Edmond deed could not defeat Waters' claim of title because they were aware that Waters was in possession of the property.

Simirica counterclaimed through his land trust, alleging that he had purchased the property on August 23, 2002 without notice of any competing ownership claims and that his trust had superior claim to the property.  Simirica also filed a cross-claim against Robert Ambriz, alleging that he had purchased the property from Ambriz through multiple land trust transactions and

6

that Ambriz's failure to convey good title was damaging him to the extent of the losses he suffered in the Waters-Lah action. In addition, Simirica filed an action to eject a tenant who apparently leased the property from Waters.

At trial, Waters testified that he had begun rehab work on the property to prepare it for resale, and that in the course of that work, he saw evidence that the home on the property had been broken into. A neighbor to the property told Waters that he had seen Simirica's brother entering the house, and that the brother had given him a business card from Simirica's real estate company. Waters also testified that he went to Simirica's office, that Simirica reported that he had purchased the property from an individual named Andy Roman, and that when Waters told Simirica that he owned the property, Simirica answered that he "should settle up with Nate Edmond."

Simirica testified that Andy Roman was a real estate agent he had known for many years, and that Robert Ambriz, a realtor who worked for Roman's agency, had told him about the property. Simirica stated that he had visited the property with Ambriz just before submitting a purchase contract, but that he did not ask if Ambriz had a key to the house and did not ask to see the interior of the house. Simirica visited the property once again before closing, but again did not seek entry into the house, and did not

receive keys to the house at closing.  Simirica testified that he took possession of the house by removing plywood boarding from the back door.

The trial court noted that much seemingly relevant evidence had not been presented at trial:  Kwiatkowski was not called as a witness by either Waters or Simirica, neither Ambriz nor Roman testified, and Edmond was not asked to explain the conveyance to Roman.

The court found that Simirica's claim to the property stemmed from a fraudulent deed: though the Edmond deed was dated March 16, 2001, the same date the Kwiatkowski-Waters deed was actually executed, the court found that Edmond's testimony established that his dealings with Kwiatkowski and her attorney occurred some time in 2002, after she had conveyed her interest in the property to the Waters-Lah trust.

Having found Simirica to be a purchaser from a fraudulent title claimant, the court held that his claim on the property could prevail only if he demonstrated that he had given actual value for the property in good faith, without notice of the cloud on its title.  The court determined that Simirica failed to sustain this burden.  "Simirica's testimony that he contracted to pay $100,000 cash for the property without ever seeing the inside or so much as looking through the window strains credulity.

While dealers in distressed realty often purchase property 'as is,' anyone motivated to make a profit would want to know in advance how much of an investment would be required to render the property habitable. Moreover, Simirica never asked Ambriz, a realtor who purported to own the property, for a key and was content to have to break into the property after the close. Indeed, it is apparent to the Court that Simirica's testimony was designed to convey complete ignorance about the condition of the property so as to reinforce his claim that he knew nothing that would have put him on notice that someone else owned the property." The court also remarked that Simirica's reported statement to Waters that he should "settle up" with Edmond cast doubt upon his claims of lack of notice. Finally, the court held that despite producing a contract that reflected his agreement to pay $100,000 for the property, Simirica did not provide any proof of an actual payment for the property.

The court concluded that Simirica, having taken title to the property with notice of an adverse claim, acted at his own risk, and held that he could not prevail in his couterclaim for title, his action for ejectment of Waters' tenant, or his third-party claims against Ambriz.

The court then addressed Waters' claim to the property. It determined that he did not have an interest in the property until

March 16, 2001, when he executed an agreement to purchase the property and obtained a deed from Kwiatkowski, and that on February 13, 2001, when he redeemed the property's delinquent taxes, he did not have the interest required by Illinois law for redemption. "Under these circumstances it appears that Waters was a stranger to the title when he redeemed on February 13, 2001."

The trial court, clearly troubled by Waters' back-dating of his deed from Kwiatkowski, commented, "On a very fundamental level, the Court is reluctant to award equitable relief to a party who has engaged in inequitable (at best) and more likely, unlawful conduct. Waters mislead [*sic*] the Clerk's Office when he sought to redeem the property, he mislead [*sic*] Edmond regarding his intention to include him in the purchase and, most disturbingly, he mislead [*sic*] a judge of the Circuit Court of Cook County when he produced a deed that purported to convey an interest to him as of a date when he had no colorable claim to the property."

But the court concluded that the expungement proceeding was "a fait accompli" with respect to the case before it. The court determined that Simirica could not benefit from Waters' unclean hands because none of Waters' improper conduct had been directed at him. The court held that because Waters' trustee was the

10

grantee under the only valid deed to the property, it was the proper titleholder.

Simirica appeals. No other party has appeared in this court. As noted previously, we find the instant appeal to present issues that are sufficiently straightforward to allow our resolution without the assistance of an appellee's brief, and therefore address the merits.

ANALYSIS

Simirica contends that the trial court erred in finding that he was not a *bona fide* purchaser without notice of Waters' claim to the property. That finding may be disturbed in this court only upon a showing that it is against the manifest weight of the evidence. Guzik v. Wujek, 132 Ill. App. 2d 336, 339-40 (1971). A finding is against the manifest weight of the evidence only when the opposite conclusion is clearly evident. BCGS, L.L.C. v. Jaster, 299 Ill. App. 3d 208, 216 (1998).

Trial court error has not been demonstrated here. In our view, Simirica's willingness to purchase the property without inspection of its interior and his closing of the purchase without receiving keys strongly support the trial court's conclusion that he had actual notice of a competing claim to the property. This conclusion is further supported by Waters' testimony that Simirica told him to settle his claim with Edmond.

11

Simirica argues that he appropriately relied on the results of a title search which revealed no competing claims, but this fact could reasonably be determined by the trial court to be outweighed by the evidence supporting the conclusion that Simirica was aware of the Waters claim.

Simirica's contention that he did pay actual value for the property is similarly insufficient to require reversal of the trial court's contrary finding. He argues that his deed demonstrates that he gave consideration for the property and that various trial exhibits served as evidence of his actual payment for the property, but neither the deed nor the exhibits cited in his brief in this court have been made a part of the appellate record. In the absence of an appellate record sufficient to demonstrate that the trial court's finding was contrary to the manifest weight of the evidence, we must presume that finding to be correct. Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984).

We accordingly reject Simirica's argument for reversal of the trial court's finding that he was not a *bona fide* purchaser without notice. The rejection of that argument dictates a similar rejection of Simirica's argument that the trial court erred in denying relief on his cross-claims against the parties who conveyed the property to him. A party who receives property with notice of other claims takes title subject to those known

12

claims. American National Bank & Trust Co. v. Vinson, 273 Ill. App. 3d 541, 544 (1995). The clear import of Simirica's notice of Waters' claims on the property is that he cannot assert that he has been injured by those claims. Simirica's cross-claim against Ambriz did not allege that Ambriz warranted clear title, and Simirica makes no such claim of breach of warranty in this court; we therefore conclude that the trial court properly dismissed his claims against Ambriz and his other land trust grantors as a result of its finding that he had notice of the Waters claim.

Simirica next contends that Waters could not be granted title to the property because of the trial court's finding that Waters had redeemed the property's delinquent taxes before acquiring any interest and then defeated the tax purchaser's acquisition by producing a deed which falsely indicated that he had purchased the property from Kwiatkowski before the lapse of the redemption period.

The trial court correctly observed that a party attempting to redeem a property tax delinquency must have at least some interest in the property, however incomplete or undefined. In re Application of the Cook County Treasurer, 185 Ill. 2d 428, 433 (1998). The court observed that Waters, at the time he redeemed, had not reached agreement with Kwiatkowski for purchase of the

13

property and had no legal or equitable title claim. The court further noted that there was no evidence that Kwiatkowski directed Waters to redeem.

Emphasizing these facts, Simirica argues, as he did in the trial court, that Waters' actions gave him unclean hands and should bar him from an award of title to the property. The trial court ruled that since the Waters conduct at issue was not directed at Simirica and did directly involve the title dispute between the two parties, Simirica could not invoke the unclean hands doctrine to prevail against Waters. We agree. Cole v. Guy, 183 Ill. App. 3d 768, 776-77 (1989). The court then concluded that it was without jurisdiction to address its concerns about Waters' conduct, and that since his claim of title was superior to that of Simirica, its only choice was to award him the property in fee simple. We do not believe that the court's options were so foreclosed.

Waters' admission that he had backdated his deed from Kwiatkowski established the possibility that the tax sale purchaser, Mooring Tax, had an interest in the property that had been improperly defeated. The trial court was empowered to address this occurrence by allowing Mooring Tax to be joined as a party to the quiet title proceeding to permit it to address the defeat of its purchase.

14

The failure to join a necessary party may be raised at any time: by the parties or by the trial court or appellate court *sua sponte*. Lakeview Trust & Savings Bank v. Estrada, 134 Ill. App. 3d 792, 811 (1985). A necessary party is one whose presence in a lawsuit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter which would be materially affected by a judgment entered in his absence; (2) to reach a decision to protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy. In re Application of Busse, 145 Ill. App. 3d 530, 535 (1986). In the instant case, the facts presented to the trial court revealed that Mooring Tax may have been prevented from taking title to the property by fraud; we believe these facts revealed an interest in the title proceedings sufficient to require the company's inclusion. The trial court explicitly expressed dissatisfaction at its apparent inability to address Waters' conduct; we believe that a complete determination of the controversy would have enabled an opportunity for Mooring Tax to assert its claim to the title.

CONCLUSION

For the foregoing reasons, we affirm the portion of the judgment of the circuit court of Cook County which denies Simirica relief on his claims for title to the property, his

15

claims for ejectment, and his claims against Ambriz and the land trusts that conveyed the property to him.  We reverse that portion of the judgment which grants title in fee simple to Waters' trustee, Lah, and remand the cause to the circuit court for further proceedings allowing the joinder of Mooring Tax and any other party found by the court to be necessary to a complete and equitable resolution of the title dispute.

Affirmed in part and reversed in part; cause remanded.

McBRIDE, P.J., and O'MALLEY, J., concur.

No. 1-05-3134

Please use the following form

M.L. Lah, as Trustee u/t/a dated February 13, 2001, a/k/a Trust No. 5226,

Plaintiff/Counter-Defendant-Appellee,

v.

Chicago Tile Land Trust Co., as Trustee u/t/a dated June 26, 2002, a/k/a Trust No. 1111039; Chicago Title Land Trust Co., as Trustee u/t/a dated November 14, 2001, a/k/a Trust No. 1110352; Chicago Title Land Trust Company, as Trustee u/t/a dated November 5, 2001, a/k/a Trust No. 1110090,

Defendants/Cross-defendants-Appellees,

LaSalle Bank, NA, as Trustee u/t/a dated March 19, 2001, a/k/a Trust No. 127392,

Defendant/Counter-plaintiff-Appellant,

Valerian Simirica,

Defendant/Counter-plaintiff/Cross-plaintiff-Appellant,

Robert Ambriz,

Defendant/Cross-defendant-Appellee.

Docket No.

COURT
Opinion
Filed

No. 1-05-3134

Appellate Court of Illinois
First District, SIXTH Division

March 14, 2008
(Give month, day and year)

JUSTICE JILL K. McNULTY DELIVERED THE OPINION OF THE COURT:

JUSTICES

McBRIDE, P.J., and O'MALLEY, J., concur.

APPEAL from the Circuit Court of Cook County; the Hon_____ Judge Presiding.

Lower Court and Trial Judge(s) in form indicated in margin:

Appeal from the Circuit Court of Cook County.

The Hon. MARY ANNE MASON Judge presiding.

FOR APPELLANTS
John Doe, of Chicago

For APPELLEES, :
Smith and Smith of

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word r NONE if not represented.

APPELLANT: LAW OFFICES OF BURTON BROWN, Chicago, IL, Burton A. Brown and Stephen J. Spiegel.

17

Chicago,                          APPELLEE: NONE