# Illinois Official Reports

## Appellate Court

---

*Victor Township Drainage District 1 v. Lundeen Family Farm Partnership*,
2014 IL App (2d) 140009

---

| | |
|---|---|
| Appellate Court Caption | VICTOR TOWNSHIP DRAINAGE DISTRICT 1, Plaintiff-Appellee, v. LUNDEEN FAMILY FARM PARTNERSHIP, LINDA S. JOHNSON, CYNTHIA J. LUNDEEN, DEAN A. LUNDEEN, GERALD L. LUNDEEN, MARGARET E. PERRY, and DONNA A. SHAW, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-14-0009 |
| Filed | September 29, 2014 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

The trial court properly granted an injunction ordering defendants to disconnect a drain tile they installed on their farmland and then connected to plaintiff's neighboring drainage district and cap off the tile at least 100 feet east of the connection after allowing representatives of plaintiff district to inspect the disconnection, since the trial court did not err in failing to apply either the good-husbandry rule, which permits the owner of dominant land to alter the flow of water onto a servient estate if such action is required for proper husbandry of the dominant estate, or the civil law rule followed in Illinois, which allows water to naturally flow from higher land to lower land, especially when defendants' land did not naturally drain into plaintiff district, but, rather, the water on defendants' land either naturally flowed away from plaintiff's district or pooled on defendants' land and defendants' drain tile diverted the water to plaintiff's district; furthermore, defendants failed to establish that plaintiff was estopped from asserting any right to injunctive relief, the trial court properly found that plaintiff established irreparable harm, and defendants' objection to the requirement that plaintiff's representatives be allowed to inspect the removal of the last 100 feet of defendants' tile and the installation of a cap was rejected.

| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 11-CH-543; the Hon. John F. McAdams, Judge, presiding. |
| --- | --- |
| Judgment | Affirmed. |
| Counsel on Appeal | Daniel J. Kramer, of Law Offices of Daniel J. Kramer, of Yorkville, for appellants. |
| | John W. Countryman, of Foster & Buick Law Group, LLC, of Sycamore, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Zenoff and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1      On August 28, 2013, the trial court entered an order granting injunctive relief to the plaintiff, Victor Township Drainage District 1, against the defendants, Lundeen Family Farm Partnership, Linda S. Johnson, Cynthia J. Lundeen, Dean A. Lundeen, Gerald L. Lundeen, Margaret E. Perry, and Donna A. Shaw. The trial court directed the defendants to disconnect a drain tile on their property that they had connected to the plaintiff's drainage district and cap it off at least 100 feet east of the connection. The trial court further ordered that, before the soil was replaced, the plaintiff or its representatives should be allowed to inspect the disconnection. The defendants appeal from that order. We affirm.

¶ 2                              BACKGROUND

¶ 3      On September 30, 2011, the plaintiff filed suit against the defendants, seeking a temporary restraining order and a preliminary injunction. The plaintiff alleged that it was a drainage district established pursuant to the Illinois Drainage Code (Drainage Code) (70 ILCS 605/1-1 *et seq*. (West 2010)). The plaintiff further alleged that the defendants installed a drain tile on their property (the subject property), a 120-acre parcel east of Graham Road in De Kalb, and connected it to the plaintiff's facilities without the plaintiff's consent. Further, the subject property was outside the natural watershed of lands drained by the plaintiff's facilities. The plaintiff alleged that it was irreparably damaged and that there was no adequate remedy at law.

¶ 4    A bench trial was held on April 5, 2012. There is no transcript of the proceedings in the record. However, the record includes the trial court's written order entered on May 10, 2012. In that order, the trial court (Judge Kurt Klein) acknowledged that the defendants should not have connected their drain tile to the plaintiff's system. However, the court further found that it would be unreasonable to require the defendants to disconnect, because the plaintiff had observed the installation over a period of time and failed to object. The court noted that no further connection would be permitted and that the defendants would be required to pay the impact costs of connecting to the plaintiff's facilities.

¶ 5    On July 10, 2012, the plaintiff filed a motion to reconsider or for a new trial. In part, the plaintiff argued that a new trial was warranted because the trial court had applied an incorrect legal standard to the facts. Specifically, Illinois drainage law did not permit one to change the natural course of drainage and, further, it did not permit one watershed to drain into another watershed without prior approval.

¶ 6    On September 24, 2012, following a hearing, the trial court entered a written order granting the plaintiff's motion and ordering a new trial. A complete report of proceedings is not included in the record. However, there is an excerpt from the hearing. In the excerpt, the trial court explained that it had hoped that the parties would see the reasonableness of its May 10 order, but acknowledged that they had not. The trial court stated:

"[The plaintiff's counsel] has a valid point with the third matter[,] misapplication of the law. I was trying to accomplish something that maybe I shouldn't have been trying to accomplish. Maybe it was a bridge too far, but apparently these fellows are not going to get along, so I'm going to vacate the proofs and give you another whack at it with another judge."

¶ 7    On January 13, 2013, the plaintiff filed a two-count first amended complaint. Count I requested a mandatory injunction ordering the defendants to disconnect their drain tile from the plaintiff's drainage district and a permanent injunction barring any future connections by the defendants. Count II, which requested a declaratory judgment, was ultimately dismissed upon the plaintiff's motion.

¶ 8    On February 19, 2013, the defendants filed an answer to the first amended complaint, alleging three affirmative defenses. The first affirmative defense was based on estoppel. In support, the defendants alleged that the subject drain tile installation occurred within the boundaries of Union Drainage District No. 4 (Union 4) and that Union 4 approved the work. Additionally, prior to commencement of the work, the plaintiff asked Dean to attend one of the plaintiff's meetings. At that meeting, Dean informed the plaintiff's commissioners of the drain tile installation and no one voiced any objections at that time or while the work was being completed. The defendants therefore argued that the plaintiff should be estopped from asserting any right to an injunction.

¶ 9    The second affirmative defense was based on accord and satisfaction. The defendants argued that in 1976 the plaintiff and Union 4 entered a written agreement whereby Union 4 was allowed to outflow into the plaintiff's district and would pay for the cost of the use of the common drain between the two districts. The third affirmative defense was based on the good-husbandry rule. The defendants argued that the good-husbandry rule was an exception to the Illinois drainage law and allowed for the drain tile installation at issue, because it resulted in the reasonable agricultural use of the subject property.

¶ 10    A bench trial commenced on March 26, 2013, with Judge John McAdams presiding. Dale Stockley testified that he was the plaintiff's attorney. Stockley was familiar with the subject property, which he described as the Lundeen property east of Graham Road. On September 6, 2011, Dean came to one of the plaintiff's meetings. Two of the plaintiff's commissioners were present. Dean requested that the subject property be annexed into the district. Eight days later, Stockley and the commissioners went to view the subject property and saw that it drained to the east. At that time he saw a backhoe on the property, but could not see for what it was being used. There was no discussion of a drain tile installation or approval for such work. Two days later, Stockley went back to Dean's farm and informed Dean that his request to annex was denied.

¶ 11    David Burrows testified that he was a licensed civil engineer and was employed by the plaintiff in 2006 and 2007 to review boundary lines. Since the defendants had installed the subject drain tile, he had been out to view the property at the plaintiff's request. He was familiar with the plaintiff's boundaries, as depicted in plaintiff's exhibit No. 1. The exhibit was prepared under his supervision. There were some spot elevations done near roadways and culverts to determine which way things were draining. The property draining to the east drained to the Somonauk Creek watershed, and the property that drained to the west went to the plaintiff's watershed. (The record indicates that the subject property was located in Union Drainage District No. 1 (Union 1) and that the Somonauk Creek watershed is also referred to as the Union 1 ditch.)

¶ 12    Burrows further testified that, based on conversations with some of the property owners downstream of the subject property and within the plaintiff's district, there were flooding issues during severe rain events prior to the connection of the subject property. Accordingly, he opined that the defendants' drain tile connection would increase the number of potential floods. Based on his investigation and preparation of plaintiff's exhibit No. 1, and based on elevations, Burrows opined that the natural watershed of the subject property drains to the east. He opined that there was no impediment to placing a drainage system in the area and draining it to the east. Further, it was not reasonable to drain the subject property to the west. Burrows testified that, if the trial court ordered a disconnection of the subject property from the plaintiff's drainage district, the disconnection would have to be a minimum of 100 feet east "to assure that you're getting separation below ground so that that water doesn't migrate on the ground and still get into the ditch." Additionally, once the drain tile was removed, clay would have to be placed in the excavation to ensure that water did not continue to flow in that direction.

¶ 13    Ronald Frieders testified that he was one of the plaintiff's commissioners. There were about 7,500 acres in the plaintiff's district. In 2007, the plaintiff hired an engineering firm to figure out if there were any properties adding water to the district that were not contributing to maintenance fees. Such properties were then annexed into the district. He was familiar with the subject property and knew that it was not within the plaintiff's boundaries. Frieders further testified that he was familiar with the subject drain tile installation. The drain tile was 24 inches in diameter and was placed 17 feet deep to get it across Graham Road and into the low ground.

¶ 14    Frieders owned and farmed property within the plaintiff's boundaries and occasionally experienced crop damage as a result of overflow. In the spring of 2011, he had over 30 acres of crops that he replanted three times due to repeated rains. Since that time there had not been any unusually heavy rain events. Prior to 2011, the plaintiff's drainage district would overflow two

to three times in a five-year period. It would be difficult to estimate damages to his crops as a result of the subject drain tile installation, because every rainfall event was different.

¶ 15    Norman Wesson testified that he was also one of the plaintiff's commissioners and had been for four or five years. Wesson owned and farmed about 800 acres, all within the plaintiff's drainage district. In early 2011, he experienced flooding on about 60 acres of his property. He had to replant those acres three times. Wesson remembered that, at some point, Dean had requested to annex the subject property into the plaintiff's district but the request was ultimately denied.

¶ 16    Thomas Huddleston testified that he was a land drainage contractor and had been in the business for 38 years. He designed and installed drainage systems and provided consulting services. He was retained by the defendants to examine the tiling involved in this particular action. Based on his investigation, Huddleston testified that the plaintiff's drainage district was very well maintained. On the contrary, the drainage ditch to the northeast of the subject property (Union 1) was poorly maintained, with erosion along the banks and a large build-up of sediment.

¶ 17    Huddleston further testified that, from his on-site visit and his review of topography maps in the area, he was able to ascertain the elevation in the low spots of the subject property. Huddleston identified defendants' exhibit No. 1 as a United States Geological Survey elevation map that he had laid over a digital photograph. The topography was accurate to within five feet. From this exhibit, Huddleston testified that the low spot of the subject property was 730 feet. The elevation of the bank of the ditch that was located northeast was 725 feet and the bottom was only a foot to a foot-and-a-half lower. The plaintiff's ditch in the location at issue was between 720 and 721 feet. Because the plaintiff's ditch had a lower elevation, it was a "better choice" for discharging the drain tile installed on the subject property.

¶ 18    Huddleston further testified that he was regularly hired to install drain tile and generally installed it a minimum of two feet deep. This was deeper than in previous times because modern farm equipment was much heavier and tilling was done much deeper. In addition to his 38 years' experience, he had received some training at Louisiana State University, he was a consultant for several governmental organizations, and he had retainer agreements with the United States Department of Energy and with Kane County Water Resources. Huddleston testified that, based on his training, experience, and review of the property at issue, he would drain the subject property to the plaintiff's drainage ditch because it had a lower normal water level and due to the relative elevations.

¶ 19    On cross-examination, Huddleston testified that, although he knew where the watersheds were generally, he did not know the exact boundaries and thus could not say whether the subject property was within the plaintiff's watershed. He did not know for how long the ditch to the northeast had not been maintained, but stated that it could be cleaned. He did not observe flow problems in the plaintiff's drainage district downstream of the subject property. When asked whether the subject property could have been drained to the ditch northeast of the property, Huddleston testified that he could not answer that question, because he did not know the elevations of that drainage ditch.

¶ 20    Dean testified that he and the other defendants own the subject property. In early September 2011, Stockley called to invite him to a meeting of the plaintiff's commissioners. He attended that meeting on September 6, 2011. Stockley, Wesson, and Norm Johnson were present. He was asked what tile work was being planned in Union 4. He showed them on a plat

map the improvements being planned in Union 4 and on the subject property. At that time, no one indicated that he should not go on with the drainage plans.

¶ 21   He talked with Stockley and the commissioners several days later when he saw them congregated on Graham Road. They were talking about watershed issues and he disagreed with them as to watershed lines and what authority Union 4 had in the process. At that time, the subject drain tile installation was in progress and easily visible from Graham Road. Neither Stockley nor the commissioners requested that the contractor stop work. A few days later, Stockley and the commissioners returned to Graham Road. They again discussed watershed issues and Union 4. Again, no one requested that the contractor stop working on the drain tile installation. Later that same day, Stockley came to Dean's house. Dean discussed improvements to the plaintiff's ditch downstream from the subject property. Stockley did not request that Dean cease doing any drainage work.

¶ 22   Dean acknowledged that he was served with the first complaint in this case on September 30, 2011. No work was done after that date. The drain tile installation in total was about 2,000 feet. At the time of the first conversation with Stockley and the plaintiff's commissioners on Graham Road, the drain tile installation was within several hundred feet of being completed. Dean had lived on Graham Road for 58 years. The general terrain of the subject property was very flat. However, the subject property had a low spot, where water would collect and start spreading out. The water would finally soak into the ground and reduce the crop yield. Dean had to replant on the subject property three times in 2011, because it was an unusually bad year.

¶ 23   On cross-examination, Dean acknowledged that he never initiated any formal proceedings to seek annexation to the plaintiff's district. Instead, he went to Union 4 to seek permission because he knew that there was an agreement between the plaintiff and Union 4. Union 4 gave him permission to install the subject drain tile. He acknowledged that the subject property was not in Union 4. He believed that it was in the process of being annexed to Union 4, but acknowledged that there was no petition filed in court to do so. Dean admitted that he did not file an oath of office or bond when the county board appointed him a commissioner of Union 4. Dean further testified that he paid the contractor $340,000 individually for the tile work on the subject property. Upon questioning by the trial court, Dean testified that the drain tile commenced on the subject property and went into the Union 4 tile on his neighbor's property. The Union 4 tile eventually ran into the plaintiff's drainage ditch. This completed the testimony, and the parties filed written closing arguments.

¶ 24   On August 28, 2013, the trial court entered a written order. The trial court noted that section 2-9 of the Drainage Code authorized the plaintiff to institute appropriate actions to "recover damages and, if an unlawful connection is made to a covered drain, may compel disconnection." 70 ILCS 605/2-9 (West 2010). The trial court found that the plaintiff was required to prove the traditional requirements for injunctive relief: (1) a clear and ascertainable right in need of protection, (2) no adequate remedy at law, and (3) irreparable harm.

¶ 25   The trial court found that the plaintiff had proven a clear and ascertainable right in need of protection. The trial court noted that the plaintiff had a right to protect the landowners downstream (70 ILCS 605/4-14 (West 2010)) and a duty to maintain the drainage district (*Urban v. Village of Inverness*, 176 Ill. App. 3d 1, 10 (1988)). The trial court also found that there was no adequate remedy at law that was "as clear, complete, and as practical and efficient to the ends of justice as an [i]njunction." Finally, the trial court found that there would be

irreparable harm because the defendants' drain tile work would increase the amount of water flowing into the plaintiff's drainage district. The trial court determined that an injunction was warranted under these circumstances.

¶ 26 The trial court also addressed the defendants' affirmative defenses. As to the doctrine of estoppel, the trial court noted that it applied against a municipality only if the municipality acted affirmatively so as to induce reliance and cause a substantial change in position of the aggrieved party. The trial court found that there were no actions or nonactions by the plaintiff that could have induced the actions of the defendants, because it was undisputed that the majority of the drain tile work had been completed before the first meeting of the plaintiff and Dean.

¶ 27 As to accord and satisfaction, the trial court noted that the defendants claimed that the Drainage Code allowed any drainage district to connect to another drainage district and provided for any liability to be paid in just proportions. 70 ILCS 605/11-1 (West 2010). The trial court found, however, that the defendants failed to show that their actions were the actions of Union 4. Although Dean was appointed as a commissioner, no oath or bond was filed. Further, the subject drain tile installation benefitted only the defendants and was paid for by the defendants. Moreover, the trial court noted that the Drainage Code provided that court approval must be received prior to construction of additional drains and ditches. 70 ILCS 605/4-16 (West 2010). As such, even if Union 4 had the authority to connect to another district, it must first seek court approval. The trial court found that it was undisputed that no court approval was sought prior to the subject tile work.

¶ 28 Finally, the trial court addressed the good-husbandry rule. The trial court found that the good-husbandry rule was not applicable, because the subject property was not dominant to, or even within, the plaintiff's drainage district and the drain tile work did not follow the general course of natural drainage. Additionally, the trial court determined that the increased water flow went beyond any reasonable use. The trial court found the evidence undisputed that the drain tile work would increase the amount of water entering the drainage ditch. The trial court found that the plaintiff spent large sums of money maintaining its ditch and that the increased water flow would increase flooding, crop destruction, and erosion. The trial court also noted that the defendants had not proven that the development of the dominant estate outweighed the harm to the servient land, because there was no evidence of whether and to what extent the drain tile work improved their ability to farm the subject property.

¶ 29 Based on the foregoing determinations, the trial court entered an injunction ordering the defendants to remove, within 60 days and at their own expense, "all of the field tile installed by them in 2011, from the east side of Graham Road a length of at least 100 feet to the east, *** and to install sealed caps which shall be securely affixed to the open end at Graham Road." The trial court also ordered that the plaintiff be allowed to inspect, photograph, and measure the removal before any soil was replaced. The trial court prohibited the defendants from making any other connections to the plaintiff's drainage district.

¶ 30 On September 24, 2013, the defendants filed a motion to reconsider. In relevant part, the defendants argued that the trial court: (1) lacked jurisdiction to enter the injunction, because Union 4 was a necessary party and had not been joined to the suit; (2) lacked the authority to order that the plaintiff's commissioners be allowed to inspect the disconnection, since the subject property was not within the plaintiff's district; and (3) misapplied the good-husbandry rule.

¶ 31    On December 9, 2013, a hearing was held on the motion to reconsider. Following argument, the trial court entered its ruling. As to the first argument, the trial court acknowledged that, at one time, the tie-in point of the subject drain tile to the drainage ditch west of Graham Road was in Union 4. However, upon taking judicial notice of De Kalb County case No. 72-MC-104, which included the Union 4 case file that dated back to June 15, 1956, the trial court found that as of April 5, 2007, the plaintiff had incorporated the area at issue west of Graham Road into its own drainage district. The trial court noted that nothing had been done in the Union 4 file since 1986. The trial court also found that the subject property was never in Union 4. As such, the trial court determined that Union 4 was not a necessary party, because the drainage from the subject property was not Union 4's water.

¶ 32    As to the second argument, the trial court found that section 4-14(c) of the Drainage Code (70 ILCS 605/4-14(c) (West 2010)) allowed the commissioners to go onto the plaintiff's property to inspect the disconnection. Section 4-14(c) stated that commissioners may "go upon lands either within or outside of the district" for the purpose of "protecting, repairing, and maintaining" its drains. *Id.* As to the claim of misapplication of the good-husbandry rule, the trial court found that the crux of the issue was whether the subject property was dominant to the land within the plaintiff's drainage district. Because it was not, the good-husbandry rule did not apply. The trial court therefore denied the defendants' motion to reconsider. The defendants then filed a timely notice of appeal.

¶ 33                                    ANALYSIS

¶ 34    The defendants' first contention on appeal is that the trial court erred in granting the plaintiff's motion for a new trial. The purpose of a motion for a new trial is to inform the trial court of newly discovered evidence, a change in the law, or errors in the court's earlier application of the law. *Williams v. Dorsey*, 273 Ill. App. 3d 893, 903 (1995). The trial court's ruling on a motion for a new trial will not be reversed unless there is an affirmative showing that it clearly abused its discretion. *Winters v. Kline*, 344 Ill. App. 3d 919, 925 (2003). The trial court is in a superior position to consider errors that occurred, the fairness of the trial to all parties, and whether substantial justice was accomplished. *Id.*

¶ 35    In the present case, the trial court, just before it granted the motion for a new trial, stated that the plaintiff had "a valid point with the third matter[,] misapplication of the law." Apparently, that was the basis on which the trial court granted the motion. In any appeal, it is the responsibility of the appellant to supply a complete record sufficient to permit review of the issues it wishes to raise on appeal. *In re Application of the County Treasurer & ex officio County Collector*, 373 Ill. App. 3d 679, 684 n.4 (2007). In the absence of such a record, we must presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Koppel v. Michael*, 374 Ill. App. 3d 998, 1008 (2007) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)).

¶ 36    Here, the defendants have failed to include either transcripts or bystander's reports of the original bench trial or the hearing on the motion for a new trial, with the exception of the excerpt from the latter hearing that included only the trial court's final ruling. In the absence of the transcripts or bystander's reports, we do not know all the evidence presented, arguments made, or case law cited. The plaintiff's motion for a new trial and brief in support are included in the record, but the arguments therein are based on the evidence presented, which, as stated, is not included in the record. Because the record is not complete, we are unable to review

whether in fact there was a misapplication of the law based on the evidence presented. We must presume, therefore, that the trial court's decision to grant the new trial was supported by the facts presented to it during the original proceedings conducted below and was not an abuse of discretion. *Id.*

¶ 37 In so ruling, we note that the defendants argue that, in order to grant a new trial based on a misapplication of the law, the trial court is required to make specific findings as to how it misapplied the law. However, the defendants fail to cite any authority for this proposition. The argument is thus forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 720 (2010) (an appellant forfeits a claim of error if he fails to cite relevant authority).

¶ 38 The defendants' second contention on appeal is that the trial court lacked jurisdiction to enter the injunction, because the plaintiff failed to name Union 4 as a party defendant. Specifically, the defendants argue that because the plaintiff sought injunctive relief requiring the disconnection of the subject drain tile, which was installed at the direction and supervision of Union 4, the plaintiff was required to name Union 4 as a party defendant.

¶ 39 "The failure to join a necessary party may be raised at any time: by the parties or by the trial court or appellate court *sua sponte*." *Lah v. Chicago Title Land Trust Co.*, 379 Ill. App. 3d 933, 940 (2008). "This is so because due process requires the joinder of all indispensable parties to an action; as a result an order entered without jurisdiction over a necessary party is void." *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 811 (1985). "A necessary party is one whose presence in a lawsuit is required for any of three reasons: (1) to protect an interest which the absentee has in the subject matter which would be materially affected by a judgment entered in his absence; (2) to reach a decision to protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy." *Lah*, 379 Ill. App. 3d at 940.

¶ 40 In its ruling on August 28, 2013, the trial court found that the defendants failed to show that they acted on behalf of Union 4. As an alleged commissioner of Union 4, Dean had failed to file an oath or bond. The trial court also found that the drain tile installation benefitted only the defendants and was paid for by the defendants. In rejecting the defendants' argument, in their motion to reconsider, that Union 4 was a necessary party, the trial court noted that it had taken judicial notice of De Kalb County case No. 72-MC-104, which was related to the creation of Union 4 on June 15, 1956. After reviewing that file, the trial court found that the drain tile's point of connection to the plaintiff's drainage ditch was in Union 4 until April 5, 2007, when the plaintiff incorporated that area into its own drainage district. The trial court further found that the subject property was not in Union 4 and that no action had been taken in the Union 4 court file since 1986. The trial court determined that Union 4 was not a necessary party, because the subject property was not in Union 4 and thus it was not Union 4's water being drained into the plaintiff's district.

¶ 41 We agree with the trial court. Dean testified that the subject property was not in Union 4. Additionally, the trial court found, and neither party has disputed, that as of April 5, 2007, the connection point of the subject drain tile to the drainage ditch was within the boundaries of the plaintiff's district. Moreover, although the defendants contend that the drain tile installation was authorized by Union 4, the record indicates that Union 4 was not in a position to authorize such work. Although commissioners had been appointed, none, including Dean, ever filed an oath of office or bond as required by section 4-4 of the Drainage Code (70 ILCS 605/4-4 (West

2010)). No action had been taken in the court file of Union 4 since the mid-1980s and no petition had been filed seeking court approval for any of the drain work as required by the Drainage Code (70 ILCS 605/4-16, 4-19 (West 2010)). Even if the tie-in point of the subject drain tile was in a "dual district" (Union 4 and the plaintiff's district) as the defendants contend, court approval would have been required for the drain work.

¶ 42    As such, none of the factors set forth in *Lah* that would require joinder of Union 4 are present in this case. See *Lah*, 379 Ill. App. 3d at 940. Union 4 had no interest in the subject matter because the subject property was not in Union 4, and there was no evidence that Union 4 ever authorized or sought court approval for the subject tile work. Thus, neither the defendants nor Union 4 was prejudiced by its absence from the case. Union 4 was not needed to protect the interests of those before the court, because both parties adequately represented their own interests. Finally, Union 4's presence was not required for the trial court to make a complete determination of the controversy.

¶ 43    The defendants' third contention on appeal is that the trial court erred in failing to properly apply the good-husbandry rule. In regulating the natural flow of surface water between adjacent landowners, Illinois recognizes the "civil law rule," which is reflected in section 2-1 of the Drainage Code (70 ILCS 605/2-1 (West 2010)) (land may be drained in the general course of natural drainage). *Bollweg v. Richard Marker Associates, Inc.*, 353 Ill. App. 3d 560, 573 (2004). Under that rule, the owner of a dominant (higher) parcel of land is given an easement in a servient (lower) parcel to allow surface water to naturally flow from the dominant land to the servient land. *Id.* at 573-74. The owner of the servient estate is not obligated to receive surface water in different quantities or at different times than would come to his land ordinarily. *Id.* at 574.

¶ 44    The good-husbandry rule is an exception to the civil law rule of surface-water drainage. *Id.* The good-husbandry rule permits the owner of dominant agricultural land to alter the flow of water upon a servient estate if this is required for proper husbandry of the dominant parcel. *Id.* However, no rule of law permits a dominant owner to unreasonably increase the flow of water upon a servient estate. *Templeton v. Huss*, 57 Ill. 2d 134, 141 (1974) ("Interference with natural drainage has been limited to that which was incidental to the reasonable development of the dominant estate for agricultural purposes."). "The question which must be confronted is whether the increased flow of surface waters from the land of the defendants to that of the plaintiff *** was beyond a range consistent with the policy of reasonableness of use which led initially to the good-husbandry exception." *Id.*

¶ 45    In the present case, the trial court found that the subject property was not dominant to the plaintiff's drainage district and that the drain tile installation did not divert the water toward a natural course of drainage. Accordingly, the trial court found that the civil law rule and the good-husbandry exception were not applicable to the present circumstances. The trial court went on to find that, even if the subject property was dominant to the plaintiff's drainage district, the drain tile installation exceeded what was reasonable, because the plaintiff's drainage district already flooded every few years, the plaintiff spent large sums maintaining its district, and the drain tile installation would result in increased flooding, crop destruction, and soil erosion.

¶ 46    We will not disturb the trial court's findings of fact unless they are contrary to the manifest weight of the evidence. *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 623 (2006). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly

evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). None of these circumstances are present in this case. The evidence presented to the trial court amply supports the court's findings. The subject property is clearly not dominant to the plaintiff's district, and the natural course of drainage was not to the west toward the plaintiff's district. Burrows testified that, based on elevations, the subject property clearly drained to the east. Huddleston did not testify that the subject property naturally drained to the west. Rather, he testified that the property should drain to the west because the plaintiff's drainage ditch was better maintained than the ditch to the east. Dean testified that the property did not drain in any direction, because it was a low spot that would just collect water. Accordingly, because the natural course of drainage was not to the west, the civil law rule and the good-husbandry exception simply do not apply to the facts in this case.

¶ 47    The defendants argue that the plaintiff should be estopped from asserting any right to an injunction, because it failed to act when it first learned of the drain tile installation. Equitable estoppel prevents a party from asserting rights where the assertion of those rights would work a fraud or injustice on another party. *Tim Thompson, Inc. v. Village of Hinsdale*, 247 Ill. App. 3d 863, 878 (1993). Although equitable estoppel is applicable to public bodies, a finding of equitable estoppel against a public body is not favored. *La Salle National Trust, N.A. v. Village of Westmont*, 264 Ill. App. 3d 43, 64-65 (1994). "Where it is invoked against a governmental entity exercising its governmental functions, estoppel will lie only in extraordinary or compelling circumstances." *Id.* at 65. A party invoking estoppel against a municipal corporation must demonstrate that: (1) an affirmative legislative act of the municipality induced justifiable reliance on the part of the claimant; (2) the claimant acted on the basis of that reliance; and (3) the claimant substantially changed its position as a result of its reliance. *Id.* Mere nonaction of governmental officers is not sufficient to invoke estoppel. *County of Du Page v. K-Five Construction Corp.*, 267 Ill. App. 3d 266, 275 (1994). Rather, "there must have been some positive acts by the officials which may have induced the action of the adverse party under circumstances where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had previously done." (Internal quotation marks omitted.) *Id.* The question of estoppel depends on the facts of the case, and the party claiming estoppel must prove it by clear and unequivocal evidence. *Hahn v. County of Kane*, 2013 IL App (2d) 120660, ¶ 17. We will not disturb a trial court's decision on the issue of estoppel unless it is against the manifest weight of the evidence. *Id.*

¶ 48    In the present case, the trial court determined that the defendants failed to establish the elements of estoppel because there were no actions or nonactions by the plaintiff that could have induced the defendants to install the subject drain tile. Specifically, the trial court found that the majority of the drain tile work was complete prior to the first meeting between Dean and the plaintiff. We cannot say that this determination was against the manifest weight of the evidence. The record reveals that the defendants never sought approval from the plaintiff prior to commencing installation of the subject drain tile. Dean testified that, by the time he first met with the plaintiff's commissioners on Graham Road, the 2,000-foot tile was within several hundred feet of being completed. According to Stockley, Dean had just requested that the subject property be annexed into the plaintiff's district a few days earlier. However, two days after Stockley and the commissioners viewed the subject property from Graham Road, Stockley returned to tell Dean that his request to annex was denied. The defendants argue that,

when Stockley and the commissioners met Dean on Graham Road, the drain tile installation was clearly visible and no one told Dean to cease the installation. However, Stockley testified that, although he saw a backhoe on the subject property at that time, he did not know what was being done. The conflict in the testimony was for the trial court to resolve. See *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 59 (it is the trial court's role to resolve conflicts in the evidence). Accordingly, we cannot say that the trial court erred in finding that the defendants failed to prove the basis for estoppel by clear and unequivocal evidence.

¶ 49     The defendants also argue that there was no evidence that the subject drain tile connected with the plaintiff's drainage district. However, in their answer to the first amended complaint, the defendants admitted that the drain tile drained into a Union 4 drainage ditch and that the Union 4 drainage ditch connected with the plaintiff's drainage district. An admission in a verified pleading, unless it is the product of mistake or inadvertence, is a binding judicial admission. *Nissan Motor Acceptance Corp. v. Abbas Holding I, Inc.*, 2012 IL App (1st) 111296, ¶ 19. Further, Dean testified that the drain tile ran from the subject property and connected with the Union 4 drain tile west of Graham Road. There was evidence that the Union 4 drain tile west of Graham Road was in the plaintiff's watershed and that it was annexed into the plaintiff's drainage district in 2007.

¶ 50     The defendants further argue that the plaintiff failed to establish a risk of irreparable harm, because there was no evidence showing that the defendants' drain tile installation would be the proximate cause of any injury and there was no evidence as to how much the drain tile connection would increase flow into the plaintiff's drainage district. "To demonstrate irreparable injury, the moving party need not show an injury that is beyond repair or compensation in damages, but rather need show only transgressions of a continuing nature." *Bollweg*, 353 Ill. App. 3d at 577. We review grants of injunctive relief under the abuse-of-discretion standard, and the trial court's findings will not be reversed unless they are against the manifest weight of the evidence. *Sparks v. Gray*, 334 Ill. App. 3d 390, 395 (2002).

¶ 51     In *Bollweg*, the reviewing court found irreparable harm where "the expert evidence established that the [defendant's] development will increase the amount of water flowing onto plaintiff's property." *Bollweg*, 353 Ill. App. 3d at 577. In the present case, Burrows opined that the defendants' drain tile connection would increase the number of potential floods in the plaintiff's district. Frieders and Wesson both testified that, prior to the drain tile installation, their property within the district would occasionally experience flooding. Dean testified that the purpose of the tile was to drain water that naturally accumulated on the subject property and inhibited its agricultural use. Accordingly, as in *Bollweg*, there was evidence that the subject drain tile connection would increase the amount of water flowing into the plaintiff's district and thus increase the potential for flooding. The trial court's finding that the plaintiff demonstrated irreparable harm is not against the manifest weight of the evidence.

¶ 52     The defendants' final contention on appeal is that, although the trial court may compel disconnection of the subject drain tile (70 ILCS 605/2-9 (West 2010)), the trial court did not have the authority to order that the drain tile be removed and that the plaintiff be allowed to inspect the removal before soil is replaced. In denying the defendants' motion to reconsider, the trial court noted that its authority to order that the commissioners be allowed to inspect the disconnection of the subject drain tile lies in section 4-14(c) of the Drainage Code (70 ILCS 605/4-14(c) (West 2010)). Pursuant to that section, commissioners are entitled to go upon

lands "either within or *outside* of the district" for the purpose of protecting, repairing, and maintaining its drains. (Emphasis added.) 70 ILCS 605/4-14(c) (West 2010).

¶ 53 We agree with the trial court. Our primary objective in construing a statute is to ascertain and give effect to the drafter's intent. *Ford Motor Co. v. Chicago Department of Revenue*, 2014 IL App (1st) 130597, ¶ 5. The most reliable indicator of this intent is the language of the statute, given its plain and ordinary meaning. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004). The plain language of section 4-14(c) of the Drainage Code clearly allows for the commissioners to go upon the subject property to inspect the disconnection of the drain tile. See 70 ILCS 605/4-14(c) (West 2010) (allowing the commissioners of a drainage district to enter upon lands "outside of the district" in order to protect, repair, and maintain its drains). Additionally, the trial court had the authority to order that the drain tile be removed at least 100 feet east of Graham Road. Burrows testified that disconnection would require the removal of at least 100 feet of drain tile to make sure that water does not continue to migrate into the plaintiff's ditch. As such, the trial court's order was necessary to ensure that there is a complete disconnection, as allowed by statute (70 ILCS 605/2-9 (West 2010)) (if an unlawful connection is made to a covered drain, any interested person may compel disconnection), and that water from the subject property does not continue to migrate to the plaintiff's drainage ditch. Accordingly, the defendants' final contention is without merit.

¶ 54 CONCLUSION

¶ 55 For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

¶ 56 Affirmed.