2022 IL App (2d) 210531
No. 2-21-0531
Opinion filed November 29, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-654 |
| WILLIE L. SMART, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court, with opinion. Justices Schostok and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant, Willie L. Smart, was found guilty of two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2020)). The trial court sentenced him to five years in prison. On appeal, defendant contends that he was denied his constitutional right to a fair trial by an impartial jury when the trial court required that all jurors wear masks during *voir dire*. We affirm.

¶ 2                          I. BACKGROUND

¶ 3                    A. Response to COVID-19 Emergency

¶ 4    On March 17, 2020, in response to the COVID-19 emergency, the Illinois Supreme Court ordered all Illinois courts "to establish and periodically update, as necessary, temporary procedures

to minimize the impact of COVID-19 on the court system, while continuing to provide access to justice." Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020). In response, the supreme court issued a series of orders governing court functions. For instance, on March 20, 2020, the supreme court ordered that "the Chief Judges of each circuit may continue trials for the next 60 days." Ill. S. Ct., M.R. 30370 (eff. Mar. 20, 2020). On April 7, 2020, the supreme court modified its earlier order to specify that the circuit courts "may continue trials until further order of [the] Court." Ill. S. Ct., M.R. 30370 (eff. Apr. 7, 2020). On May 20, 2020, the supreme court ordered that,

"[e]ffective June 1, 2020, *** each circuit may return to hearing court matters, whether in person or remotely, according to a schedule to be adopted for each county by the chief judge in each circuit. The circuit courts shall continue, to the extent possible, to allow for appropriate social distancing and attempt to reduce the number of persons appearing personally for court appearances." Ill. S. Ct., M.R. 30370 (eff. May 20, 2020).

On August 27, 2020, the supreme court prohibited "[i]ndividuals, including judges, court staff, parties, attorneys, jurors and witnesses," from entering any courthouse if they "are not wearing a mask or face covering." Ill. S. Ct., M.R. 30370 (eff. Aug. 27, 2020). The supreme court's order further provided: "Masks or face coverings should be worn at all times while in the courthouse unless the person is (1) otherwise instructed by court personnel; (2) under the age of 2; or (3) incapacitated, having trouble breathing, or otherwise unable to remove the mask without assistance." *Id.*

¶ 5    Based on the supreme court's directive, the chief judge of the Sixteenth Judicial Circuit entered numerous orders that established evolving COVID-19 procedures impacting court operations. As is relevant here, on May 26, 2020, the chief judge entered General Order 20-22, effective June 1, 2020 (Kane County Cir. Ct. G.O. 20-22 (June 1, 2020)). It provided that

"[c]riminal jury trials will begin on August 3, 2020, subject to limitations on the number that can be accommodated." *Id.* On July 17, 2020, the chief judge entered General Order 20-24 (Kane County Cir. Ct. G.O. 20-24 (July 17, 2020)), imposing a mask requirement in all courthouse locations. It provided:

"1) Anyone over the age of two entering and occupying public areas of the courthouse must wear a mask/face covering, unless excused by the presiding judge; and

2) The mask/face covering must be well-secured and worn in such a manner as to cover both the mouth and nose of the individual; and

3) Individuals are encouraged to wear their own mask/face covering. If an individual does not have a mask/face covering, one may be provided to them, if available. If a mask/face covering is not available, the individual will not be allowed to enter the courthouse; and

4) If an individual refuses to wear a mask/face covering, he/she will be denied entry; and

5) Reasonable accommodations will be provided for individuals with medical conditions or disabilities that prevent them from safely wearing masks/face coverings. ***; and

6) Once inside the courthouse, if an individual refuses to wear a mask/face covering as prescribed in this Order, they will be asked to put one on or adjust their current mask/face covering accordingly. ***; and

7) All judges, judicial staff, courthouse employees, attorneys and members of the general public must wear masks/face coverings when inside the public spaces of the

courthouses, at all times, including the lobby, elevators, restrooms, public corridors, and courtrooms, regardless of whether the courtroom is open to the public; and

8) In limited situations where appropriate social distancing can be maintained, the presiding judge of the courtroom may remove his/her mask/face covering if necessary to make an appropriate record and to conduct court proceedings; and

9) In limited situations where appropriate social distancing can be maintained, the presiding judge of the courtroom may grant permission to the attorneys and/or litigants appearing in front of him/her to remove their mask/face covering to be heard in a court proceeding. If permission is granted, the attorney or litigant must place their mask/face coverings back on immediately upon the conclusion of the hearing; and

10) In limited situations during hearings and trials, where appropriate social distancing can be maintained, the presiding judge of the courtroom may grant permission to witnesses to remove their mask/face coverings while testifying." *Id.*

¶ 6                                B. Indictment and Pretrial Motions

¶ 7      On August 12, 2020, the State indicted defendant on two counts of domestic battery. 720 ILCS 5/12-3.2(a)(1), (2) (West 2020). Both counts alleged that defendant committed domestic battery on April 1, 2020, by striking Melanie Banner, a family or household member, about the head. Count I alleged that "defendant knowingly caused bodily harm." See *id.* § 12-3.2(a)(1). Count II alleged that "defendant knowingly made physical conduct of an insulting or provoking nature." See *id.* § 12-3.2(a)(2).

¶ 8      The trial court set a jury trial for September 24, 2020. Meanwhile, the State filed several motions *in limine*. In addition, defendant filed a motion *in limine* seeking to preclude evidence of

his prior convictions. On September 24, 2020, the trial court ruled on the motions and continued the case, on the State's motion, to September 28, 2020.

¶ 9 On September 28, 2020, the parties answered ready for trial. However, the trial court continued the case to October 15, 2020, due to "facilities limitations at the Kane County Judicial Center" resulting from the COVID-19 pandemic.

¶ 10 On October 15, 2020, both parties answered ready for trial. The trial court advised the parties that the case would start the following week "with jury selection on Monday or Wednesday" but that it did not know "for sure which date." The court continued the matter to Monday, October 19, 2020, and then to Wednesday, October 21, 2020.

¶ 11 Before trial, on October 20, 2020, defense counsel filed a 26-paragraph "Motion for Jury Trial in Compliance with the Sixth Amendment," raising issues concerning "certain procedures for jury trials to cope with the demands and recommendations from the CDC [(Centers for Disease Control)] and Kane County Health Department concerning indoor gatherings." As is relevant here, in a section titled "Venire/*Voir Dire*," counsel cited paragraphs 8 and 9 of General Order 20-24 and argued:

> "9. Based on this general order and social distancing trial procedures, the venire members are masked throughout *voir dire*. The defendant's rights to effective assistance of counsel in *voir dire* and to an impartial jury, are violated by this trial procedure. Defense counsel cannot meaningfully ask and challenge jurors without being able to see their demeanor. Nor can counsel guarantee a fair and impartial jury when their entire *voir dire* testimony is from behind a mask. Additionally, there is no uniformity of masks. Different masks will conceal different amounts of jurors' faces but all will be concealed below the eyes rendering demeanor judgment useless. Without the knowledge of the potential jurors'

demeanor while answering *voir dire* questions defense counsel is deprived of critical context and non-verbal information necessary to make peremptory and for cause challenges."

In addition, defense counsel noted that social distancing requirements would prevent the entire venire from being present in the courtroom during *voir dire*. Therefore, even if the prospective jurors outside the courtroom could observe the in-court proceedings, counsel would not be "able to see their reactions or hear comments that [they] may be making in regard to the courtroom dialogue." Counsel further asserted that, "with only a certain number of the venire of potential jurors in the courtroom," she would "not be able to determine whether she should exercise more challenges to attempt to get those other jurors on the jury or rather, not exercise challenges to keep them off."

¶ 12    Counsel also asserted that, "[t]hrough investigation," she learned of several exemptions for potential jurors that could be unfavorable to the defense. First, a potential juror aged 65 and older who claims a preexisting health condition could be released from service. Second, a potential juror under age 65 with a preexisting health condition confirmed by a doctor's note could also be released from service. Third, an individual of any age claiming "that due to the pandemic he or she is not comfortable with appearing for jury service" could be deferred from service for six months. According to counsel, these exemptions would "severely limit[ ] the reflection of the community in the venire and as such, improperly effect[ ] [*sic*] defendant's right to an impartial and fair jury, and to a jury of his or her peers."

¶ 13    Additionally, counsel challenged certain "social distancing procedures." Counsel claimed that procedures affecting how the jurors would be seated during trial would negatively impact counsel's ability to see the jurors while questioning witnesses and the jurors' ability to see the

witnesses. She also argued that requiring the public to view the trial from a remote location would prevent the jurors from seeing the members of the public who have come to support defendant. Counsel also argued that the "[potential] juror[s'] attitudes about service *** may be hindered by the aura of danger that surrounds public service at a public accommodation—the courthouse." "Potential jurors may feel anxious to spend as little time as possible in deliberation or awaiting the evidence to conclude so that they are clear to return to their homes." Consequently, *voir dire* is important for counsel "to gauge the attitudes of potential jurors" about jury service during the pandemic.

¶ 14 Counsel also raised issues concerning witnesses, arguing that "[t]he witness must testify without a mask so that he/she can be confronted face to face." Thus, a witness must not be allowed to insist on wearing a mask during the witness's testimony.

¶ 15 In conclusion, counsel argued, "a jury trial with social distancing procedures violates the defendant's constitutional rights." To remedy the issue, defendant requested the following:

"(1) The venue for the trial should be moved out of the courthouse and into a structure that is large enough so that the jury can sit, socially distanced, in one area. This will allow all jurors essentially the same view of the proceedings, and all the parties have the same view of the jurors;

(2) The venue should be large enough to include an audience area for public access; [and]

(3) If these changes are impossible, defendant would request a release on a personal recognizance and would consent to a continuation of the trial for the purpose of allowing the public health emergency to abate."

¶ 16    Defendant also filed a "Motion for Reconsideration," asking the trial court to reconsider its ruling on one of the State's motions *in limine*.

¶ 17                                    C. Jury Trial

¶ 18    On October 21, 2021, the parties appeared and answered ready for trial. Thereafter, the following colloquy occurred:

"MR. WERDERICH [(DEFENSE COUNSEL)]: *** One thing I would like to make of record is that following the pretrial there were two motions that were filed and we would like to have those heard, if possible.

THE COURT: I am not hearing them now. I will get to it if I can. We don't do motions the day of trial.

I have one of them. What's the other one?

MS. LEDER [(CODEFENSE COUNSEL)]: Judge, there is a motion in regard to a reconsideration on something that was ruled on.

THE COURT: That I have.

MS. LEDER: And then the motion about the COVID trial standards and prejudice.

THE COURT: I will address those when we have time, if we have time."

After a short discussion about other matters, the State commented: "[I]n terms of the defense motion to reconsider, I think we can address that in about two or three minutes. I can—I think that's just a misunderstanding amongst the counsel." The court resolved the issue for the parties and, thereafter, stated: "Bring up the jurors."

¶ 19    As the prospective jurors gathered, the trial court quickly explained the *voir dire* procedure to the parties: (1) 16 prospective jurors would be put in the back gallery, (2) the court would question all 16 prospective jurors at once, (3) 4 prospective jurors would be put in the jury box for

continued questioning, (4) the parties would use peremptory challenges in the normal fashion, (5) the parties would approach the bench to strike a prospective juror for cause, and (6) no "back-striking" would be allowed.

¶ 20    When the prospective jurors entered the courtroom, the trial court first thanked them for coming and then stated:

> "As you can see or I hope you have seen so far, we have done our best to make sure that we space people out, wear masks. I am not wearing a mask now but that's because I am going to do a lot of talking. But I have it up here for when I need it and I am far enough away from everybody that everybody should be safe from me."

¶ 21    During *voir dire*, the trial court and both parties questioned the venire members. Defense counsel inquired specifically into the venire's feelings about the COVID-19 procedures. Ten jurors were chosen from the first group of sixteen prospective jurors, and two jurors were chosen from the second group.

¶ 22    Three witnesses testified on behalf of the State: Banner and two police officers. Defendant's mother, Loretta Smart, and defendant testified for the defense.

¶ 23    The evidence generally established the following. On April 1, 2020, at about 2:30 a.m., Banner, who was living with and engaged to defendant, called the police. The police arrived, spoke to Banner, and left about 10 minutes later. Banner testified that defendant was mad at her for calling the police on him, and they had an argument. Banner had to leave for work at 5 a.m., so she took a shower. As she was exiting the shower, defendant hit her twice in the face. Banner testified that the blows to her face upset and physically hurt her. Banner called the police, and defendant left. Two police officers arrived on the scene. Both officers testified that they observed

redness on Banner's cheek. Banner was upset and "a little bit shaken." Banner did not appear to be under the influence of alcohol.

¶ 24    Defendant testified that, on March 31, 2020, he and Banner worked until 4 p.m. After work, they stopped at a store, where defendant bought three mini bottles of alcohol and two packs of cigarettes. At Banner's request, he also purchased her a pint of alcohol. They went home, ate, and drank, and defendant fell asleep around 8 or 9 p.m. Defendant woke up at midnight, and Banner was still awake and drinking. Banner asked defendant for a cigarette. When he refused to give her one, she tried grabbing cigarettes from his pocket and threatened to call the police. The police arrived at his apartment and spoke with defendant and Banner. After the police left, he fell asleep. He woke up about 15 minutes before Banner got out of the shower. When she did, she yelled at him about talking to other women, and he left. He eventually went home and made up with Banner. Later that evening, he was arrested.

¶ 25    Loretta testified that Banner called her at 11 p.m. on April 1, 2020. Banner told Loretta that defendant did not hit her but that the police said he did.

¶ 26    The jury found defendant guilty of both counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2020)).

¶ 27                        D. Posttrial Proceedings and Sentencing

¶ 28    On November 20, 2020, defendant filed a "Motion for Judgment Notwithstanding the Verdict or a New Trial." He argued that the trial court erred in "not hearing [his] motion for a jury trial in compliance with the sixth amendment." He complained that the trial court erred in how it conducted *voir dire*. More specifically, he complained that (1) the whole venire was not seated in the courtroom, which prevented counsel from seeing the entire venire at once; (2) the jurors were required to wear masks, which prevented counsel from ascertaining "nonverbal context" of jurors;

(3) the juror pool was not an accurate reflection of the community, because some jurors were released if uncomfortable with serving; and (4) social distancing requirements deprived him of a fair trial.

¶ 29   Following a hearing on April 14, 2021, the trial court denied the motion, stating:

> "With respect to the jury pool, first there's been no showing that the defendant was prejudiced in any way. Certain people were allowed to opt out. There's no indication anyone did opt out. There were plenty of jurors here to select from. The complaint about not being able to talk to the jurors or they had masks on and so forth, questioning was never stopped by me. You could have asked questions for as long as you wanted to about the jurors to learn whatever you needed to learn. Certainly enough of their facial features were available or visible that you could tell what you needed to tell about the jurors as you were selecting them.
>
> So I don't think there was anything wrong with the jury pool or the procedures that we followed. The fact that they were not all in the room together matters at all [*sic*]. They were all asked the same questions by me. And if counsel chose to ask different questions of different groups, that's fine. That's their choice."

¶ 30   The matter proceeded to sentencing. The trial court sentenced defendant to five years in prison on count I; however, no sentence was entered on count II. Defendant moved for reconsideration of his sentence, and the trial court denied his motion. This timely appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32   Defendant contends that the trial court's requirement that the jurors wear masks during *voir dire* denied him his right to a fair trial. According to defendant, the mask requirement "prevented *** defendant and defense counsel from seeing the jurors' facial expressions to

effectively ascertain what reaction they had to important legal principles and questions posed to them." Thus, defendant lacked "reasonable assurance that prejudice in the jury pool would be discovered." The State responds that the trial court did not abuse its discretion in complying with the courthouse mask mandate and that the jurors' wearing of masks during *voir dire* did not violate defendant's right to a fair trial. We agree with the State.

¶ 33     A criminal defendant's right to trial by a fair and impartial jury is guaranteed by both the United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13; *People v. Moon*, 2022 IL 125959, ¶¶ 32-37. " 'The purpose of *voir dire* is to ascertain sufficient information about prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath.' " *People v. Encalado*, 2018 IL 122059, ¶ 24 (quoting *People v. Cloutier*, 156 Ill. 2d 483, 495-96 (1993)). "The manner, extent, and scope of *voir dire* examination rests within the discretion of the trial court." *Id.* ¶ 25. " 'An abuse of discretion occurs when the conduct of the trial court thwarts the purpose of *voir dire* examination—namely, the selection of a jury free from bias or prejudice.' " *Id.* (quoting *People v. Rinehart*, 2012 IL 111719, ¶ 16).

¶ 34     While Illinois courts have not yet addressed the issue, a survey of decisions by our sister state and federal courts discloses that every jurisdiction that has so far considered the issue has upheld COVID-19-related policies requiring or permitting potential jurors to wear masks. See, *e.g.*, *Prince v. State*, No. 106, 2022 WL 14707014 (Md. Ct. Spec. App. Oct. 26, 2022); *Guerin v. Commonwealth*, No. 2021-CA-0952-MR, 2022 WL 5265083 (Ky. Ct. App. Oct. 7, 2022); *Commonwealth v. Davis*, 2022 PA Super 71, 273 A.3d 1228, 1239-41; *United States v. Ayala-Vieyra*, No. 21-1177, 2022 WL 190756 (W.D. Mich. Jan. 21, 2022); *United States v. Watkins*, No.

18-CR-32-A, 2021 WL 3732298 (W.D.N.Y. Aug. 24, 2021); *Commonwealth v. Delmonico*, 2021 PA Super 85, 251 A.3d 829; *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 851 (S.D.N.Y. 2021); *United States v. Thompson*, 543 F. Supp. 3d 1156, 1164 (D.N.M. 2021); *United States v. Robertson*, No. 17-CR-02949-MV-1, 2020 WL 6701874 (D.N.M. Nov. 13, 2020); *United States v. James*, No. CR-19-08019-001-PCT-DLR, 2020 WL 6081501 (D. Ariz. Oct. 15, 2020); *United States v. Trimarco*, No. 17-CR-583 (JMA), 2020 WL 5211051 (E.D.N.Y. Sept. 1, 2020); *United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733 (M.D. Ga. Aug. 21, 2020). Because this court may consider cases from federal and foreign jurisdictions as persuasive authority when there is no Illinois authority on a particular issue, we consider a representative sample of these cases for guidance. See *People v. Bensen*, 2017 IL App (2d) 150085, ¶ 30.

¶ 35 In March 2021, the United States District Court for the Southern District of New York held that the district court's mask mandate did not hinder jury selection, noting that "[b]eing able to see jurors' noses and mouths is not essential for assessing credibility because demeanor consists of more than those two body parts since it includes the language of the entire body." (Internal quotation marks omitted.). *Tagliaferro*, 531 F. Supp. 3d at 851. Recently, the Kentucky Court of Appeals relied on *Tagliaferro* in rejecting the defendant's argument that the state's mask mandate "unconstitutionally hindered jury selection." *Guerin*, 2022 WL 5265083, at *2. The Kentucky court noted that "nothing in the record indicates that [the defendant] was not given an opportunity to submit proposed *voir dire* questions for the trial court to ask prospective jurors." *Id*.

¶ 36 The Superior Court of Pennsylvania has twice rejected a challenge to *voir dire* where potential jurors wore masks. In *Delmonico*, 2021 PA Super 85, 251 A.3d at 840, the reviewing court rejected the defendant's argument that, by requiring the prospective jurors to "wear face coverings" and "spread out over a vast distance," the trial court was "unable to fully examine the

prospective jurors' conduct and demeanor in determining their credibility and fitness to serve, and consequently, [the defendant] was not ensured the empaneling of a competent, fair, impartial, and unprejudiced jury." (Internal quotation marks omitted.) The reviewing court held that "the masking and social distancing of prospective jurors [(during *voir dire*)] did not interfere with the sole purpose of *voir dire*: the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court." (Internal quotation marks omitted.) *Id.* at 842. In *Commonwealth v. Davis*, 2022 PA Super 71, 273 A.3d at 1239-41, the reviewing court relied on *Delmonico* to reject the defendant's claim that the trial court abused its discretion in permitting prospective jurors to wear face masks in accordance with the recommendations of court administration. The court found that "there [was] no evidence [that] the trial court's discretion in permitting the prospective jurors to wear masks interfered with the sole purpose of *voir dire*." *Id.* at 1241.

¶ 37    We agree with the reasoning of the above cases. Here, there is no evidence that the wearing of face masks " 'thwart[ed] the purpose of *voir dire* examination—namely, the selection of a jury free from bias or prejudice.' " *Encalado*, 2018 IL 122059, ¶ 25 (quoting *Rinehart*, 2012 IL 111719, ¶ 16). The trial court, which "is in the best position to observe the demeanor of potential jurors" (*People v. Mitchell*, 152 Ill. 2d 274, 296 (1992)), specifically found that "enough of [the jurors'] facial features were available or visible that you could tell what you needed to tell about the jurors as you were selecting them." The court further noted that counsel "could have asked questions for as long as [they] wanted to about the jurors to learn whatever [they] needed to learn." In addition, as the State notes, there are a multitude of ways by which counsel can observe a prospective juror's demeanor without viewing the juror's nose and mouth. See *People v. Fauntleroy*, 224 Ill. App. 3d

140, 159 (1991) (and cases cited therein). Thus, we find no abuse of discretion or evidence that the court's requirement that the jurors wear masks denied defendant a fair and impartial.

¶ 38     Defendant's reliance on *Mitchell* does not warrant a different conclusion. In *Mitchell*, the defendant argued that the State engaged in purposeful discrimination by using three peremptory challenges to exclude black venirepersons from the jury. *Mitchell*, 152 Ill. 2d at 291. In justifying its use of the preemptory challenge to one of the jurors, the State asserted that it challenged her because (1) she had expressed a strong desire not to miss work for jury service and, (2) when the State informed her that the death penalty would be sought, she " 'puckered up and made a sour face as if that was distasteful to her.' " *Id.* at 301-02. The supreme court affirmed the trial court's finding that the State's challenge to the juror was not racially motivated. *Id.* at 304. Although *Mitchell* supports defendant's assertion that a juror's facial expression can be a proper basis for excluding a juror, it does not stand for the proposition that a facial covering over a juror's mouth and nose prevents a defendant from " 'ascertain[ing] sufficient information about prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath.' " *Encalado*, 2018 IL 122059, ¶ 24 (quoting *Cloutier*, 156 Ill. 2d at 495-96); see also *Tagliaferro*, 531 F. Supp. 3d at 851 ("Being able to see jurors' noses and mouths is not essential for assessing credibility because demeanor consists of more than those two body parts since it includes the language of the entire body." (Internal quotation marks omitted.)).

¶ 39     We are also not persuaded by the remaining cases relied on by defendant, as they concern testifying witnesses, not jurors, and are otherwise readily distinguishable. See *People v. Sammons*, 478 N.W.2d 901, 908-09 (Mich. Ct. App. 1991) (allowing the prosecution's chief witness to testify while wearing a mask that covered his face and head violated the defendant's confrontation rights);

*Bowser v. State*, 2009 WY 54, ¶ 14, 205 P.3d 1018 (2009 (seating arrangement that obstructed the defendant's view of the victim during her testimony at her videotaped deposition violated the defendant's confrontation rights); *United States v. Walker*, 772 F.2d 1172, 1179 (5th Cir. 1985) (holding that the trial court should have allowed the defendant to testify after the close of evidence and noting that " '[t]he facial expressions of a witness may convey much more to the trier of facts than do the spoken words' " (quoting *United States v. Irvin*, 450 F.2d 968, 971 (9th Cir. 1971) (Kilkenny, J., dissenting)). As defendant acknowledges, a defendant does not have the same right to confront a juror as he does a witness.

¶ 40     Finally, we note that defendant also suggests that "it was an abuse of discretion for the trial court to refuse to address the defendant's pretrial motion regarding the masking of jurors." However, to the extent that defendant raises the court's refusal to rule on this issue as a separate basis for reversal, defendant has forfeited this argument by failing to cite authority to support it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Victor Township Drainage District 1 v. Lundeen Family Farm Partnership*, 2014 IL App (2d) 140009, ¶ 37.

¶ 41     Accordingly, based on the foregoing, we hold that the trial court did not abuse its discretion in how it conducted *voir dire*. Thus, defendant was not denied his constitutional right to a fair trial by an impartial jury.

¶ 42                                  III. CONCLUSION

¶ 43     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 44     Affirmed.

**_People v. Smart_, 2022 IL App (2d) 210531**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 20-CF-654; the Hon. David P. Kliment, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Erin S. Johnson, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |